**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, and New York Shipping Association, Inc., Petitioners,**

v.

**HELLENIC LINES, LTD., Respondent.**

No. 81 Civ. 6833 (MEL).

United States District Court,
S.D. New York.

Oct. 27, 1982.

Thomas W. Gleason, New York City, for petitioner Intern. Longshoremen's Ass'n; Ernest L. Mathews, Jr., New York City, of counsel.

Lambos, Flynn, Nyland & Giardino, New York City, for petitioner New York Shipping Ass'n, Inc.

Zock, Petrie, Reid & Curtin, New York City, for respondent; R. Alexander Hulten, New York City, of counsel.

LASKER, District Judge.

This case arises out of a disputed arbitration proceeding between petitioners International Longshoremen's Association ("ILA") and New York Shipping Association ("NYSA") and respondent Hellenic Lines, Ltd. ("Hellenic"). Hellenic brings this action to vacate the arbitration award and ILA/NYSA moves to confirm.

The award in controversy relates to a "late tonnage assessment" against Hellenic under a collective bargaining agreement entered into with the ILA/NYSA. The agreement specifies that a tonnage assessment is to be applied to all tonnage handled by ILA members. Pursuant to the agreement, Hellenic was invoiced in the amount of $174,231.60 for tonnage for the contract years ending in 1978 and 1979, as well as $43,056.24 constituting interest on under-reported tonnage for the contract year ending September 30, 1978. Hellenic, disputing the calculation of interest charges, sought to have its claim heard through the established grievance machinery existing under the collective bargaining agreement.

After presenting its claim at a hearing convened by the Trustees of the NYSA/ILA Fringe Benefit Escrow Fund, an award in the amount of $43,056.24 was issued against Hellenic. Hellenic now takes issue with the validity of that award.

■ Hellenic's first contention, that the Trustees violated the due process provisions of the collective bargaining agreement, is readily dismissed. The due process requirement appears in Annex D of the collective bargaining agreement, ¶ 5(d), which requires "hearings meeting all the requirements of due process [for] any and all persons desiring to be heard on any assessment issue." The basis for Hellenic's claim is that there were two hearings held by the

Trustees, only the first of which was attended by representatives of Hellenic. The issuance of a corrected award stemming from what is alleged to have been a "second hearing" is urged as violative of the contract's due process guarantee. It is clear, however, on the basis of the affidavits and correspondence submitted, that there was in fact no second hearing. The corrected award was premised on facts elicited at the only actual hearing that did take place and Hellenic was present at that hearing. That Hellenic erroneously believed there was a second hearing was no doubt prompted by the date of October 20th having been inserted in the original award instead of the actual date on which the hearing was held, October 6th. That the October 20th date was nothing more than a typographical error should have been apparent to Hellenic upon reading the letter which accompanied the award. That letter specified that the award derived from the decision reached by the Trustees at the October 6th hearing. Since Hellenic was present at the hearing of its claim, there is no support for its charges of misbehavior on the part of the Trustees, or lack of due process.

■ Hellenic's second claim, that the Trustees exceeded their powers, is also without merit. Hellenic argues that under the collective bargaining agreement tonnage assessments are to be set by the Contract Board itself and not, as was the case here, by the Trustees, sitting as a Labor Relations Committee (LRC). However, annex "D" of the agreement specifically delegates to the Contract Board all necessary powers to implement the agreement. Pursuant to this authorization the Board issued its Report No. 3533, which provides that in cases of delinquency, a hearing shall be held by the *Labor Relations Committee*. The report further details that "[t]he purpose of the hearing [by the Labor Relations Committee] shall be to take evidence with respect to the delinquency and to issue a final and binding Award...." Accordingly, we find that the hearing in question was prop-

erly before the LRC as the appropriate tribunal.[1]

▮ Hellenic's third contention is that this court lacks jurisdiction to confirm the award because a hearing before the LRC did not constitute actual arbitration. Hellenic suggests that Step 3 of the grievance machinery, a hearing before the LRC, is only a preliminary dispute resolution device, and that arbitration is provided only under Step 4. Hellenic contends that because Step 4 was never reached, this court lacks jurisdiction to confirm the award. This argument is unpersuasive.

Hellenic is bound by all the provisions of the collective bargaining agreement, including Step 3 of the grievance machinery. In *General Drivers, Warehousemen & Helpers et al. v. Riss & Co., Inc.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), the Supreme Court held that an award by a joint labor-management committee, even if not denominated an "arbitration" award, is enforceable if the award "is [rendered by] the parties' chosen instrument for the definitive settlement of grievances under the Agreement...." *Id.* at 519, 83 S.Ct. at 791. Hence, if the LRC's decisions are intended, under the collective bargaining agreement, to be binding in cases such as this, it is immaterial that formal arbitration proceedings are available only under Step 4 of the agreement.

Step 3 of the grievance machinery, which provides for the establishment of an LRC, provides:

"The Third Step. There shall be established a Joint Labor Relations Committee consisting of not more than five representatives of the Employers and not more than five representatives of the Union. The LRC shall meet weekly on a stated day and at a stated time and shall be in general charge of the Grievance Machinery and the day to day relations between the ILA and the NYSA. This Committee shall not only discuss and dispose of, on the basis of merit, all disputes referred to them, but shall have the power and authority, in the event of final disagreement and upon motion of either side, to refer any and all matters under disagreement to the Contract Board."

Step 4, providing for formal arbitration proceedings, applies to a dispute only when a party waives the alternative, preliminary steps provided by the grievance machinery, or when there is a deadlock among the members of the LRC. The availability of Step 4 is not, as Hellenic suggests, a matter of right, except under these two circumstances. Here, there was neither a waiver by Hellenic of the preliminary steps of the grievance machinery, nor a deadlock among the Step 3 arbitrators.

▮ In the case of delinquency in payments of tonnage assessments, moreover, Report No. 3533 of the Contract Board makes it unmistakably clear that the LRC's determination is intended to be final. As already indicated, the report, issued pursuant to the Contract Board's contractual authority, authorizes the LRC to "issue a final and binding Award, together with interest and costs, against the carrier in the event it shall be found that such a delinquency, in

---

1. Hellenic cites *N.L.R.B. v. Amax Coal Company*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), in support of its position that the Trustees exceeded their powers in making the assessment. By this citation, Hellenic apparently contends that even if the LRC is the appropriate tribunal for making the assessment, the Trustees of the Fringe Benefits Escrow Fund may not sit as an LRC. Hellenic's reliance on *Amax* is misplaced. Amax held that employer-selected trustees of trust funds created under § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), are not "representatives" of the employer within the meaning of § 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(B), which makes it an unfair labor practice for a union "to restrain or coerce ... an employer in the selection of his representatives for the purpose of collective bargaining or the adjustment of grievances." In the course of its decision, the Court reasoned in part that the fiduciary duties of the trustees of a benefits fund distinguish them from an employer's collective bargaining and grievance adjustment agents, and that the unfair labor practice provisions are consequently inapplicable to the selection of such trustees. *Amax* cannot be read, however, as holding that where, as here, the parties are bound under a collective bargaining agreement to submit certain disputes to trustees of a benefits fund, the courts must disregard that agreement.

fact, exists." Because the LRC's determination is a conclusive dispute resolution device under the collective bargaining agreement, this court would have jurisdiction to confirm the award under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, even if the court did not have jurisdiction to do so under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Jurisdiction under the Arbitration Act does exist, however, because the collective bargaining agreement plainly evidences an intent to submit controversies to arbitration if necessary, rather than to resort to a judicial forum. The fact that the agreement does not explicitly provide for entry of judgment on the arbitration award does not preclude confirmation of the award by a federal court. *See Kallen v. District 1199, National Union of Hospital and Health Care Employees,* 574 F.2d 723, 726 (2d Cir.1978); *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424 (2d Cir. 1974).

Because the petition to confirm the arbitration award is properly before the court, and because no misconduct or impropriety by the LRC occurred in reaching that award, the motion to confirm the award is granted. The motion to vacate the award is denied.

It is so ordered.