**W. Robert CURTIS and Talitha A. Curtis, Plaintiffs,**

**v.**

**John F. DUFFY, Barbara S. Levison, Esq., Michael Fitzgerald, Gordon F. Lupien, M.D., William A. Curry, Esq., Law Offices of James C. Gahan, Jr. and Parker, Coulter, Daley & White, Defendants.**

**Civ. A. No. 89–0913–S.**

United States District Court, D. Massachusetts.

July 18, 1990.

---

W. Robert Curtis, Boston, Mass., for plaintiffs.

William Curry, Law Offices of James C. Gahan, Jr., Robert L. Farrell, Richard L. Neumeier, Jacqueline Y. Parker, Parker Coulter Daley & White, Peter C. Knight, David E. Maglio, Morrison Mahoney & Miller, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND FOR SANCTIONS

SKINNER, District Judge.

The plaintiffs, W. Robert Curtis ("Robert") and Talitha A. Curtis ("Talitha"), allege that defendants participated and conspired in the violation of the federal anti-racketeering statute and contravened several Massachusetts state laws by virtue of their role in a fraudulent scheme instituted by the General Accident Insurance Company ("GA"). The purpose of the scheme was to deny coverage, delay settlement and force Talitha to litigate her personal injury claim.

Defendants are charged with racketeering and conspiracy in violation of RICO, 18 U.S.C. § 1961 *et seq.*, violations of M.G.L., chs. 93A and 176D, and both federal and Massachusetts common law. The jurisdictional foundation of this suit is based upon RICO, 18 U.S.C. § 1964(a)-(d); 28 U.S.C. § 1331; and the pendent claim doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1986).

Plaintiffs filed this action on April 26, 1989, against defendants John J. Duffy, Michael Fitzgerald, Barbara S. Levison (collectively called "Duffy"), William A. Curry, and Law Offices of James C. Gahan (collectively called "Curry"), and Gordon F. Lupien, M.D. ("Lupien").

On May 11, 1989, Curry and on May 22, 1989, Duffy moved to dismiss asserting that the complaint failed: (i) to allege RICO violations with sufficient particularity under Fed.R.Civ.P. 9(b), and (ii) to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). They also alleged insufficiency of process under Fed.R.Civ.P. 12(b)(4). The defendants moved for sanctions, pursuant to Fed.R.Civ.P. 11, on the grounds that the claims based on RICO were not based on reasonable inquiry, well grounded in fact or law, and were only brought to harass and damage defendants' reputations.

On June 13, 1989, defendant Lupien moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the grounds that the complaint failed to state a cause of action upon which relief could be granted.

On July 6, 1989, the plaintiffs filed the amended complaint. It added the Law Firm of Parker, Coulter, Daley & White ("Parker") as defendants; made minor modifications throughout ¶¶ 1–98, and alleged conspiracy to violate the RICO statute by all defendants pursuant to 18 U.S.C. § 1962(d); and asserted pendent jurisdiction. The amended complaint alleges for the first time: (i) an M.G.L. c. 93A action by both plaintiffs against John J. Duffy and Michael Fitzgerald for unfair and deceptive settlement practices; (ii) a breach of contract action by Robert against Levison; (iii) an action in fraud by Robert against Levison; (iv) a claim for breach of covenant of good faith dealing by both plaintiffs against John J. Duffy and Michael Fitzgerald; (v) an action for intentional infliction of mental distress by Talitha against all defendants; (vi) a claim for deliberate falsification by a non-insurer against John J. Duffy and Michael Fitzgerald; and (vii) an action in deceit by both plaintiffs against all defendants.

On September 11, 1989, defendants Duffy and Parker filed two joint motions seeking: (i) dismissal for failure to state a claim upon which relief could be granted under RICO pursuant to Fed.R.Civ.P. 12(b)(6) [1], and (ii) sanctions under Fed.R.Civ.P. 11, on the grounds that the claims based on RICO were not founded on reasonable inquiry or well grounded in fact or law. On September 20, 1989, defendant Lupien moved to dismiss based upon Fed.R.Civ.P. 12(b)(6). Defendants Curry have not filed a motion to dismiss plaintiffs' amended complaint. This memorandum therefore addresses so much of their motion to dismiss the original complaint as refers to issues which survive in the amended complaint. All of the above motions, including the motion for sanctions, are also dealt with in this memorandum.

### Allegations of the Complaint

For purposes of a motion to dismiss, I must take the allegations of the complaint as true, allowing dismissal only when it is plain that the plaintiffs can prove no set of facts entitling them to relief. *See, e.g., Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir. 1987).

The amended complaint alleges the following scenario:

On May 29, 1984, plaintiff Talitha was struck and injured while riding a bicycle by an automobile insured by GA. Talitha was totally disabled for a month and required periodic medical care to treat the injuries thereby sustained. Although proof of loss was obtained from the insured shortly after the accident, GA allegedly refused to receive acknowledgement of Talitha's claims for about six months.

---

**1.** Defendants Duffy and Parker have moved to dismiss for failure: (i) to allege a "pattern of racketeering activity" as required for RICO; (ii) to adequately particularize the alleged fraud underlying RICO, under Fed.R.Civ.P. 9(b); (iii) to assert the necessary predicates and nexus for a conspiracy charge under 18 U.S.C. § 1962(d); and (iv) pendent state claims should also be dismissed because the RICO claims, only basis for federal jurisdiction, must be dismissed.

Thereafter Talitha's father, Robert, intervened as her attorney and sought to negotiate a settlement for his daughter's claims. Robert is also currently a plaintiff in this action. The plaintiffs assert that "[GA] continued to deny acknowledgement of Plaintiff's claim and did not make a single payment on the claim until after plaintiff had been forced to drop out of college due to lost wages."

Plaintiffs further assert that even when GA acknowledged Talitha's claims, it failed to investigate the facts properly, refused to pay the requested amounts, and did not interview any of the witnesses to the accident until after litigation had begun. After several months of negotiations, GA and plaintiffs reached an agreement in 1985 by which GA acknowledged liability and made a partial payment. Notwithstanding that the parties eventually reached an agreement, plaintiffs allege that GA deliberately delayed negotiation of a prompt and equitable settlement for the physical injury and the lost wages pursuant to a fraudulent scheme to avoid payment.

GA's fraudulent scheme to maximize profits was allegedly accomplished through its agents, the defendants in the case at bar. The thrust of plaintiffs' allegations is that these agents (two individual lawyers, their respective law firms, a consulting doctor, and two adjustment agents) would systematically deny coverage, delay settlement, and compel claimants like Talitha to litigate. Defendants allegedly were following GA's fraudulent instructions and acting in concert with GA, although GA is not a party to this action.

The pleadings assert that the fraudulent scheme was implemented by the different defendants as follows:

Defendants Duffy did not conduct a proper investigation of the facts. They either refused to pay or recommended only the partial payment of the documented claims, thus delaying settlement. Talitha was consequently compelled to litigate to avoid her claim being time-barred by the statute of limitations. Moreover, Duffy allegedly created false evidence that GA used during the course of litigation.

Defendant Fitzgerald is an employee of Duffy Adjustments who created false evidence in connivance with Duffy. Fitzgerald misrepresented Talitha's medical reports. In May of 1986, he made an inappropriately low offer of $1,000.00 to settle the claim although he knew that the existing documented losses were much greater.

Based upon the false evidence created by Duffy and Fitzgerald and in agreement with them, on March of 1987, Mulkern, an employee of GA, offered to settle the claim for $2,500, an amount much lower than Talitha's documented damages.

The intentional delay in settlement for a reasonable amount lasted for about three years and forced plaintiffs to begin a suit in the Suffolk Superior Court in May of 1987. As a result of the delay, Talitha "[l]ost two years out of the development of her professional career and as a consequence graduates from law school two years later than she would have but for GA's scheme" and "[R]obert ... lost thirty eight hours from his business and hundreds of dollars in costs and expenses while attempting to negotiate a settlement that GA never intended to enter." During this three-year period, Mulkern, Duffy, and Fitzgerald "[m]ade interstate phone calls and sent letters by mail to the Plaintiffs and to each other in support of their scheme to evade the prohibitions of M.G.L. c. 176D against unfair and deceptive settlement practices, to compel litigation by the Plaintiffs, and to execute the various fraudulent schemes designed by GA."

As to defendants Curry and Levison, plaintiffs allege that they used litigation as a business tool in an unlawful and unethical way causing further injury to plaintiffs. Both attorneys planned, agreed to, and did implement GA's fraudulent scheme. They allegedly did so by defending the insurance companies in an unnecessary and overly aggressive manner. They delayed plaintiffs' settlement and required the drafting and service of over 75 legal documents to prosecute Talitha's alleged right to compensation.

Plaintiffs further assert that during this period Curry, Levison, and their respective

**38**

law firms—Gahan and Parker—"[m]ade numerous interstate phone calls and sent letters by mail to the Plaintiffs and to each other in order to carry out the scheme to extinguish the rights of the Plaintiffs."

On May 21, 1987, Talitha commenced an action in the Suffolk County Superior Court against the owner and the operator of the vehicle involved in her accident. Joined as defendants in that action were GA and Duffy, charged in substance with delaying and frustrating the settlement of the plaintiff's claim (presumably in violation of M.G.L. c. 176D and c. 93A).

In the fall of 1988, Levison and Curry reached an agreement to settle all the underlying claims for approximately $15,-000.00. They knew, however, that only a partial payment would occur. GA paid the promised amount of $10,000.00 and settled its part of the case. Lexington Insurance Company, Parker, and Levison broke their settlement agreement, did not pay the agreed $5,000.00, and brought a motion in bad faith to disqualify Robert as Talitha's attorney. Plaintiffs allege that said motion was only "[p]resented to the court as a litigation tactic and not out of any actual concern for ethical obligations." Plaintiff Robert withdrew as Talitha's counsel to avoid any ethical violation. (It appears from the defendants' submissions that as part of the settlement the plaintiffs gave a general release to GA, releasing all claims against GA, including those arising under M.G.L. c. 176D and c. 93A.)

Plaintiffs allege that the pattern of racketeering was manifested throughout the months of deceptive settlement negotiations and final agreement to settle when "[v]arious defendants made interstate phone calls and sent letters by mail to the plaintiffs and to each other in support of the secret coordinated plan to split the claims, settle one, and continue to litigate the other."

### Rulings of Law

To state a viable case under RICO, the plaintiffs must show a pattern of perpetration of one or more of the predicate acts constituting "racketeering activity" as de-fined by 18 U.S.C. § 1961(1). From this formidable list the plaintiffs have chosen mail fraud as the predicate act which allegedly triggers the defendants' liability under RICO. In my opinion, however, the best case made out by the allegations of the complaint is violation of M.G.L. c. 176D, § 3(9) and c. 93A, neither of which is on the list of activities proscribed by 18 U.S.C. § 1961(1). That case has already been presented to the Superior Court, at least as to GA and Duffy; it has been settled and the defendants released. The extent to which that release may protect other defendants who were acting on behalf of GA presents an interesting question of state law which need not be addressed in this action, for reasons stated hereinafter.

In my view this complaint fails adequately to plead mail fraud or any other kind of fraud. To begin with, statements of attorneys made in connection with litigation are absolutely privileged under Massachusetts law. *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir.1984) *citing Sriberg v. Raymond*, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976). Secondly, the settlement of personal injury claims is the subject of negotiation, and insurance companies and their claims agents are entitled to seek the best bargain they can make, subject to the constraints of M.G.L. c. 176D, to protect their insureds and minimize their losses.

The complaint in a civil RICO case must comply with the requirement of Fed.R.Civ.P. 9(b) that fraud be pleaded with particularity. "The plaintiffs have merely stated conclusory allegations of mail and wire fraud .... with no description of any time, place or content of the communication." *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 292 (1st Cir.1987). The requirement of particularity is strictly construed in this circuit. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir.1984). It is not enough to salt the complaint with the words "falsely" and "fraudulently."

 

In contrast to the situation in *New England Data Services, supra,* there is no suggestion that plaintiffs' position could be improved in this respect by further discovery.

Furthermore, to state a claim under RICO, the plaintiffs must allege: (1) that a person; (2) conducted the affairs; (3) of an enterprise; (4) through a pattern of racketeering activity. *See, e.g., Norman v. Brown, Todd & Heyburn,* 693 F.Supp. 1259, 1263 (D.Mass.1988). In my opinion the complaint describes what was basically a single transaction, namely the settlement of a particular personal injury claim. The fact that the transaction was accomplished in a series of steps does not establish a pattern for purposes of RICO. *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 30 (1st Cir.1987). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *See H.J. Inc., et al., v. Northwestern Bell Telephone Company, et al.,* — U.S. —, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Norman v. Brown, Todd & Heyburn,* 693 F.Supp. 1259 (D.Mass.1988) (listing the critical factors).

The unsupported allegation that the defendants' conduct was part of a general scheme by the insurance industry to subvert a statutory system for the insurance of automobile liability claims falls far short of an adequate description of a RICO pattern.

Accordingly, in my opinion the complaint fails to state a claim for violation of RICO or conspiracy to violate RICO. Since there is no other basis for invoking the jurisdiction of this court, and no longer any basis for the exercise of pendent jurisdiction, I must also dismiss the assorted state claims contained in the complaint, which in any case are of questionable merit.

Defendants Duffy, Parker and Curry have moved for the imposition of sanctions against the plaintiffs under Fed.R. Civ.P. 11, on the ground that this action was brought solely to harass the defendants and damage their reputations. The case has enough of the indicia of a purely vindictive action to warrant an evidentiary hearing.

## ORDER

The defendants' motion to dismiss is allowed, and judgment of dismissal shall enter accordingly. The clerk shall assign a date for an evidentiary hearing on the defendants' motion under Rule 11.