CHARLES RIVER DATA SYSTEMS, INC., Plaintiff,

v.

ORACLE COMPLEX SYSTEMS CORP., Oracle Systems Corp., and Lawrence J. Ellison, Defendants.

Civ.A. No. 91–10715–S.

United States District Court, D. Massachusetts.

Dec. 2, 1991.

David J. Officer, Posternak, Blankstein & Lund, Gary R. Greenberg, Alexander M. McIntyre, Jr., Goldstein & Manello, Boston, Mass., Brian E. Moran, Chapman, Moran, Hubbard & Zimmermann, Stamford, Conn., Antonio J. Matarese, Jr., Matarese & Barry, Framingham, Mass., for plaintiff.

Daniel S. Koch, James S. Kurz, Ross W. Dembling, James J. Tierney, Kurz, Koch & Doland, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SKINNER, District Judge.

This action arises out of a failed business association between plaintiff Charles River Data Systems ("Charles River") and defendant Oracle Complex Systems Corporation ("Complex Systems") concerning software and hardware integration, marketing rights, and purchases of certain computer systems. Charles River claims that Complex Systems breached a contract and that Complex System's corporate parent, Oracle Systems Corporation ("Oracle") and Lawrence J. Ellison ("Ellison"), who is CEO of Oracle and a director of Complex Systems, induced the breach. Oracle owns 90–95% of Complex Systems.

Count I of the complaint alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* by Oracle and Ellison. Counts II through V allege breach of contract, breach of covenant of good faith, fraud, and negligent misrepresentation by Complex Systems. Count VI alleges that Oracle and Ellison tortiously interfered with Charles River's advantageous business relations with Complex Systems. Count VII alleges that all three defendants have committed deceptive acts or practices under Mass.Gen.L. c. 93A.

This court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between parties and the amount in controversy is over 50,000.

Ellison objects to venue and personal jurisdiction and moves to dismiss the claims against him or alternatively to transfer the case to the United States Court for the Northern District of California. Ellison and Oracle move to dismiss the RICO and tortious interference counts for failure to state a claim, and all three defendants move to dismiss the 93A count for failure to state a claim.

*Background*

The complaint alleges that Charles River and Oracle agreed that Oracle would grant Charles River a license to produce computers using Oracle's software, but carrying the Charles River logo. Then Charles River and Complex Systems separately agreed that Charles River would produce, and Complex Systems would purchase, a minimum number of computers using Oracle software but carrying an Oracle logo (the "purchasing contract"). As part of the purchasing contract, Complex Systems also agreed to market aggressively the Oracle logo computers. Some time after Complex Systems entered into its separate agreement with Charles River, Oracle allegedly decided that it did not want its subsidiary marketing Oracle software in computers bearing an Oracle logo because Oracle believed it could make more money by licensing its software to other computer makers who would sell computers without an Oracle logo. Oracle then allegedly coerced Complex Systems to breach its agreement with Charles River, and fraudulently orchestrated a renegotiated contract and settlement agreement, with no intention of honoring any agreement. While allegedly manipulating the other agreements, Oracle sold Charles River international licensing rights to market Oracle's products (the "licensing contract"). Plaintiff asserts that all negotiations and transactions after Oracle's decision to induce the breach by Complex Systems were tainted by an overall scheme of fraud.

*Venue and Personal Jurisdiction*

Ellison contests both venue and personal jurisdiction.

### 1. Venue

The parties argue at length over the question of whether this district is a proper forum under the venue provisions of RICO. Because the RICO claim will be dismissed, *see infra* pp. 58–59, questions of personal jurisdiction and venue must be decided by the rules which apply to all diversity cases.

■ Under the general venue statute, 28 U.S.C. § 1391, venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Plaintiff views the circumstances surrounding the various contract negotiations as the events which give rise to the claims against Ellison as well as the corporate defendants. Ellison, a California citizen, contends that the only allegations against him are that he participated in wrongdoing by initiating communications, presumably from California, with Complex Systems, a Virginia corporation. Ellison maintains that since none of the activities alleged against him occurred in Massachusetts, the claims do not meet the provisions of the venue statute and Massachusetts is not a proper forum for those claims.

Ellison's view of the facts alleged is too narrow. Charles River's allegations concern an overall scheme which may in part have occurred in conversations between participants in California and Virginia, but that also includes intentional breach of contract in Massachusetts. I find that for purposes of 28 U.S.C. § 1391, plaintiff has sufficiently alleged that venue is proper in this district as against all defendants because a substantial part of the events or omissions giving rise to the claims occurred here.

### 2. Personal Jurisdiction

■ Prior to discovery, a plaintiff need only plead, in good faith, legally sufficient allegations of personal jurisdiction in order to defeat a Rule 12(b)(2) motion. *Ball v.*

*Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990).

Personal jurisdiction is proper in a diversity case if both the controlling long-arm statute and constitutional minimum contacts analysis are satisfied. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Massachusetts long-arm statute grants jurisdiction if the cause of action stems from the transaction of business in Massachusetts. *See, e.g., Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir.1983). All parties apparently agree that the purchasing contract was a transaction of business in Massachusetts, and I so find. The only real question is whether Ellison's alleged activities in connection with the contract meet the constitutional requirements.

Ellison maintains that his title of corporate officer alone does not create personal jurisdiction which otherwise would not exist. Although Ellison is correct, *see Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 906 (1st Cir.1980), it is equally true that an officer of a corporation may not use his title to shield himself from liability. *See, e.g., Shipley Co. v. Clark,* 728 F.Supp. 818, 821–22 (D.Mass.1990). "What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." *Escude Cruz,* 619 F.2d at 907.

Charles River has alleged that Ellison, as CEO of Oracle and a director of Complex Systems, personally directed the alleged breach of contract by Complex Systems in order to insure that Oracle's own sales did not suffer as a result of the agreement between Charles River and Complex Systems. The allegations are that Ellison ordered the Virginia corporation to breach the Massachusetts contract by failing to comply with its terms in Massachusetts. This conduct constitutes a connection with Massachusetts "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and the exercise of personal jurisdiction is proper.

*Transfer*

As an alternative to dismissal, Ellison moves for transfer pursuant to 28 U.S.C. § 1406(a). That statute applies only to cases in which venue is improper, however. Transfer under § 1406(a) is denied.

*RICO*

18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Defendants Oracle and Ellison move to dismiss the RICO claim for two reasons. First, defendants cite plaintiff's lack of a pattern of racketeering activity as being fatal to the claim and second, defendants maintain that for purposes of RICO the "person" associated with an "enterprise" cannot be a corporate parent in its dealings with its 90–95% owned subsidiary.

■ In order for a defendant to have engaged in a pattern of racketeering activity for purposes of RICO, he must have performed at least two acts of racketeering activity. 18 U.S.C. § 1961(5). The mere existence of two or more qualifying acts is not enough to establish a pattern of racketeering activity; the acts must be related and amount to or pose a threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2899–2900, 106 L.Ed.2d 195 (1989).

Defendants assert that the purchasing contract, as modified, between Complex Systems and Charles River is a single transaction, and thus one act. Plaintiff counters that two separate fraudulent transactions are alleged: the purchasing contract and the licensing contract. In addition, plaintiff views the individual letters, facsimile transmissions and telephone calls which the defendants made in connection with each transaction as multiple acts for purposes of RICO.

■ Plaintiff's reliance on the licensing contract is misplaced. RICO prohibits a person from engaging in certain kinds of activities while conducting the affairs of an enterprise. A "person" charged with a RICO offense cannot also be the "enterprise" under the statutory scheme. *See, e.g., Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 28–29 (1st Cir.1987). Since the plaintiff has alleged that Oracle and Ellison are the "persons" and Complex Systems is the "enterprise," an act performed by Oracle or Ellison while conducting the affairs of Complex Systems may be prohibited by the statute, but an act performed only by Oracle in its own capacity, regardless of how objectionable that act may be, cannot be prohibited by RICO. The complaint alleges that the licensing contract was negotiated by Oracle in its own capacity. I shall disregard the allegations concerning the licensing contract and look only at the allegations concerning the purchasing contract for purposes of considering the validity of the RICO claim.

■ Defendants' reliance on there being a single transaction at issue is similarly misplaced. In *H.J., Inc., supra*, the Supreme Court held that there is no *per se* prohibition on successful prosecution of a RICO claim where a single fraudulent scheme is alleged. *Id.*, 109 S.Ct. 2893 at 2901. I see no material difference between a single transaction and a single scheme. Rather, a plaintiff must demonstrate that there exist related predicate acts which "amount to or pose a threat of continued criminal activity" *Id.* at 2900. *See Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446 (1st Cir.1990).

1. "Amount to" Continued Criminal Activity

■ In *H.J.*, the Court stated, "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement," *H.J.* 109 S.Ct. at 2902, and held that in that case, where numerous acts of bribery were alleged, "the racketeering predicates occurred with some frequency over at least a 6–year period, which *may* be suffi-

cient to satisfy the continuity requirement." *Id.* at 2906 (emphasis supplied). Continuity of criminal activity is achieved only if there is a "high number of related predicate acts committed over a substantial period of time." *Fleet*, 893 F.2d at 446. *C.f., Parcoil Corp. v. Nowsco Well Service, Ltd.*, 887 F.2d 502 (4th Cir.1989); *Service Engineering Co. v. Southwest Marine, Inc.*, 719 F.Supp. 1500 (N.D.Cal.1989).

Here, Charles River alleges that there were fraudulent letters, facsimile transmissions, and telephone calls over the course of the renegotiations for the purchasing contract. The allegations involve acts occurring between January, 1990, and, at the latest, December, 1990, when this action was filed. I find that these allegations of several months of fraudulent negotiating do not meet the requirements for acts which amount to continued criminal activity under *H.J.* and *Fleet.*

**2. "Pose a Threat of" Continued Criminal Activity**

■ Charles River asserts that alleged fraudulent acts posed a threat of continued criminal activity because by their very nature the acts threatened to repeat themselves as the relationship between the parties progressed. Where the predicate acts "can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes ... [or are] a regular way of conducting defendant's ongoing legitimate business ..." the threat of continued criminality exists. *H.J.* 109 S.Ct. at 2902. Plaintiff has alleged no facts from which a fair inference could be drawn that defendants operate as an association that exists for criminal purposes or that the defendants conduct their business in a way that regularly employs mail and wire fraud. Plaintiff has only alleged facts from which an inference could be drawn that the defendants defrauded this plaintiff. *C.f. Roeder*, 814 F.2d at 31.

Plaintiff asks for leave to conduct further discovery on the RICO claim, should the court find the claim to be legally inadequate. Plaintiff's RICO claim fails not for lack of discovery, but because the essence of plaintiff's difficulty with the defendants is a breached contract rather than fallout from a pattern of criminal activity. The request is denied.

*Tortious Interference*

Defendants Oracle and Ellison move to dismiss Count VI of the complaint, which alleges tortious interference with Charles River's advantageous business relations with Complex Systems. Defendants' theory is that under Massachusetts law a parent corporation is privileged to "interfere" with the contractual business of its subsidiary and a corporate officer enjoys a similar privilege with respect to corporate business, provided the privileged defendants act with the purpose of protecting their own legitimate economic interests, and without actual malice directed toward the plaintiff. Charles River counters that under *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20 (1990), Massachusetts has followed the Restatement (Second) of Torts § 766 (1979) in abandoning the concept of privilege in favor of embracing a case by case analysis into whether the alleged interference is "improper."

■ I believe that Massachusetts has *not* abandoned the concept of privilege as an affirmative defense to this tort. In *Geltman* the Massachusetts Supreme Judicial Court held that improper interference with a contract is a *prima facie* element of tortious interference, but by adopting the reasoning of *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978); *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982); and *Blake v. Levy*, 191 Conn. 257, 262, 464 A.2d 52 (1983), the court impliedly retained the concept of privilege. *See Geltman*, 551 N.E.2d at 23; *Top Serv. Body Shop*, 283 Or. at 209–10, 582 P.2d 1365; *Leigh*, 657 P.2d at 304.

■ Under Massachusetts law, a corporate official is privileged while acting within the scope of his employment unless he is motivated by "actual, not merely implied" malice, amounting to "malevolence," ... "spite or ill will." *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 664, 429 N.E.2d 21

(1981). In this sense, malice is not implied by mere intentional conduct.[1] I find that according to Massachusetts law, a plaintiff who is alleging intentional interference with contractual relations must always show improper interference, and when a plaintiff alleges this tort against a privileged defendant the plaintiff must show that the defendant acted with actual malice, in the sense of malevolence, spite or ill will. *See Mathias v. Beatrice Foods Co.,* 23 Mass.App.Ct. 915, 500 N.E.2d 812, 815 (1986).

■ The complaint alleges that Oracle and Ellison "performed the aforesaid acts intentionally, maliciously, unlawfully and without legal justification and/or privilege, with the intention of interfering with Charles River's advantageous business relations." The complaint does not specify whether the "malice" alleged is implied malice or actual malice sufficient to assign liability to a privileged defendant. For purposes of a motion to dismiss, I take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). I therefore assume that the complaint alleges actual malice as defined by the Court in *Gram.* Even if Oracle, who owns 90–95% of Complex Systems, is privileged to interfere with the subsidiary's business, the complaint will withstand a motion to dismiss at this time because it alleges malice sufficient to hold a privileged defendant liable.

■ Defendants argue that there are no *facts* alleged which could lead to an inference of liability. They point to *Curtis v. Duffy,* 742 F.Supp. 34, 38 (D.Mass.1990) for the proposition that bald assertions in a complaint are no substitute for allegations of fact. Defendants fail to note that the pleading issue in *Curtis* was fraud. Fraud presents an exception to the general rule of notice pleading, *see* Fed.R.Civ.P. 9(b). Alle-

gations of interference with contractual relations do not require any heightened level of particularity, and the element of malice itself is listed in Rule 9(b) as an example of a state of mind which may be pled generally, rather than with particularity. The allegation is sufficiently pled.

*Mass.Gen.L. c. 93A*

■ Plaintiff alleges that the breach of contract and fraudulent contract modification efforts are prohibited unfair and deceptive acts under Massachusetts law:

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass.Gen.L. c. 93A § 2(a). All defendants move to dismiss plaintiff's 93A claim, primarily because they assert that since the actionable conduct did not occur "primarily and substantially" within Massachusetts, they fit into a statutory exemption from liability:

"No action shall be brought or maintained under this section unless the actions and transactions constituting the ... unfair or deceptive practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be on the person claiming that such actions and transactions did not occur primarily and substantially within the commonwealth."

Mass.Gen.L. c. 93A § 11 ¶ 8.

All parties agree that the decision in *Clinton Hospital Association v. Corson Group, Inc.,* 907 F.2d 1260 (1st Cir.1991) is controlling on the issue of the meaning of "primarily and substantially" as used in the statute. In affirming the decision below, our court of appeals relied on three factors used by the Massachusetts Supreme Court in *Bushkin Assocs., Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662 (1985), to determine whether activity

---

**1.** Actual malice is not identical to "malicious" interference, which had been an element of tortious interference prior to *Geltman.* Malicious interference had been implied in law on a showing of intentional conduct by a defendant. Although two different uses of the term "malice"

in the context of one tort may be confusing, some difference in standards is essential. If an affirmative defense is to be more than illusory, more of a showing is required to overcome the affirmative defense than is necessary to make out a *prima facie* case.

occurred "primarily and substantially" in Massachusetts for purposes of 93A. The factors are first, "consideration of where the defendant committed the deceptive or unfair acts or practices," second, "where the defendant received and acted upon the deceptive or unfair statements" and third, "the situs of the plaintiff's losses due to the unfair or deceptive acts or practices." *Clinton Hospital*, 907 F.2d at 1265–66.

In considering the first factor of place, the *Clinton Hospital* court emphasized that the defendant's offensive acts occurred partly in Massachusetts because "it was intended that their force and input influence the plaintiff's behavior in Massachusetts," and because the out of state defendant failed to make certain disclosures to the plaintiff in Massachusetts. *Id.* at 1265. In the present case, Charles River similarly alleges that although the defendants' behavior originated out of state, it was intended that plaintiff's behavior be influenced in Massachusetts. I find that the first factor of the *Bushkin* test provides plaintiff here with a connection to Masschusetts equally as strong as the connection to Massachusetts which this factor provided the plaintiff in *Clinton Hospital.*

The second and third factors also weigh in favor of plaintiff. The allegedly prohibited statements were received and acted upon primarily within Massachusetts, at the plaintiff's place of business, and the plaintiff's losses due to the allegedly deceptive acts were borne in Massachusetts. I find that the allegations here, like those in *Clinton Hospital,* involve actions and transactions which occurred primarily and substantially within Massachusetts.

▆▆▆▆ Defendants' remaining arguments are of less substance. First, they maintain that only pre-contractual, not post-contractual, behavior is covered by 93A. But 93A does not require a contract to be in existence at all for liability to lie, nor have courts found an implied limitation on liability for post-contractual behavior where a contract is in existence. *See, e.g., Clinton Hospital.* Finally, defendants maintain that the difficulty the plaintiff has with the defendants is really a simple breach of contract which does not rise to the "level of rascality" required for liability to lie under 93A. Although the finder of fact may return with such a finding, it is not appropriate at this stage of litigation to so predict the outcome where the plaintiff has alleged malice and coercion on the defendants' part. The allegations being sufficient to support a claim under 93A, the defendants' motion fails.

Accordingly, defendant Ellison's motion to dismiss Counts I, VI and VII for improper venue and lack of personal jurisdiction is denied. Ellison's alternative motion for transfer to the Northern District of California is denied. The motion of defendants Oracle and Ellison to dismiss Count I, RICO, for failure to state a claim is allowed. The motion of defendants Oracle and Ellison to dismiss Count VI, tortious interference, for failure to state a claim is denied. The motion of defendants Complex Systems, Oracle and Ellison to dismiss Count VII, 93A, for failure to state a claim is denied.