**John K. POWDERLY**

v.

**METRABYTE CORPORATION and Keithley Instruments, Inc.**

**Civ. A. No. 93–10363–RGS.**

United States District Court,
D. Massachusetts.

Sept. 20, 1994.

Brenda M. Cotter, M. Frederick Pritzker, Brown, Rudnick, Freed & Gesmer, Boston, MA, for plaintiff John K. Powderly.

Andrew C. Griesinger, Marni S. Levitt, Choate, Hall & Stewart, Boston, MA, Charles E. Jarrett, Baker & Hostetler, Cleveland, OH, for defendants MetraByte Corp., Keithley Instruments, Inc.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

STEARNS, District Judge.

John Powderly sued his former employer, MetraByte Corporation (MetraByte), and its parent, Keithley Instruments, Inc. (Keithley), when Keithley refused to pay him a contractual bonus. Powderly has claims against both defendants for breach of contract (Count I) and violations of G.L. c. 93A (Count III). Powderly has a separate claim against Keithley for tortious interference with contractual relations (Count II). The defendants contend that the dispute is governed by an arbitration clause in Powderly's employment contract and that Counts II and III fail to state cognizable claims.

MetraByte was a manufacturer and distributor of personal computer-based data acquisition and communication products. On February 14, 1989, Keithley acquired MetraByte by purchasing all of its outstanding common stock. That same day, MetraByte entered into an Employment and Noncompetition Agreement (Agreement) with Powderly. The Agreement provided that Powderly would continue as MetraByte's President at an annual salary of $140,000. In addition, Powderly would be paid a bonus of $365,000 if MetraByte's Net Operating Profit exceeded twenty million dollars over the five years ending September 30, 1993. If earned, the bonus would be paid no later than December 15, 1993.

The Agreement provided that the Net Operating Profit was to be defined as:

the annual gross sales revenue of the Company less all sales returns, allowances and discounts, as determined in accordance with generally accepted accounting principles consistently applied, less all direct and indirect operational expenses, including without limitation, accounting, legal, data processing, personnel services, but not including (i) Keithley corporate overhead allocations or interest charges or credits or (ii) amortization charges (including the amortization of goodwill) resulting from the acquisition of the capital stock of the Company by Keithley, and shall be before any Federal, state, local or foreign income taxes for each fiscal period.

Agreement, p. 4.

The Agreement also specified that the Net Operating Profit was to be:

determined by Keithley's financial management in accordance with generally accepted accounting principles and consistent with those used in connection with the preparation of the Company's audited financial statements. In the event Powderly, in good faith, disagrees with Keithley's determination of the Net Operating Profit, Powderly shall provide written notice to Keithley to that effect and Keithley's independent public accountants [Price Waterhouse] shall determine the Net Operating Profit within thirty (30) days of Keithley's receipt of such written notice and such determination ... shall be final, binding and conclusive upon the Company, Powderly and all other persons who may ... have any interest herein."

Agreement, p. 5.

In May of 1990, MetraByte terminated Powderly. Because the termination was without cause, the parties agreed that Powderly was entitled to continued compensation under the Agreement and, if earned, the 1993 bonus. On September 30, 1991, MetraByte was merged into Keithley and lost whatever trappings of corporate and juridical independence it had retained as a subsidiary. On November 23, 1993, MetraByte's five year total Net Operating Profit was reported as $16,200,628. Keithley consequently did not pay Powderly his bonus. Powderly sued.

In Count I, Powderly alleges that MetraByte and Keithley violated the implied covenant of good faith and fair dealing by "diverting the operating profits of MetraByte to

other Keithley subsidiaries and charging expenses to MetraByte that were properly attributable to Keithley or other subsidiaries," as a means of defeating Powderly's entitlement to the bonus. By way of example, Powderly alleges that between 1989 and 1993 the discount rate on sales offered to Keithley's overseas subsidiaries was increased from 15% to 40% causing a $2,800,000 loss for MetraByte.[1] In Count II, Powderly alleges that Keithley "intentionally sought to impair Mr. Powderly's rights under the Agreement" by diverting MetraByte's profits. In Count III, Powderly accuses both Keithley and MetraByte of "engag[ing] in unfair and deceptive conduct ... [by] attempting to destroy and impair [Powderly's] rights under the Agreement."

The defendants, in the first instance, contend that the Complaint should be dismissed because the Agreement contains a binding arbitration clause requiring Keithley (if demanded by Powderly) to submit any dispute regarding the calculation of MetraByte's Net Operating Profit to Price Waterhouse (Keithley's accountant) for a binding determination.[2] Powderly argues that this provision is not a true arbitration clause and that Keithley's accountant is not a disinterested arbitrator. Moreover, Powderly argues that even if the provision could be construed as an arbitration clause, he never agreed to arbitrate the issues raised by his breach of contract claim.[3]

■ "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under the Federal Arbitration Act, 9 U.S.C. § 2, "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." The use of the term arbitrate is not a vital ingredient of an agreement to do so. *Intern. Longshoremen's Ass'n, AFL–CIO v. Hellenic Lines*, 549 F.Supp. 435, 437 (S.D.N.Y.1982).

■ Powderly's employment agreement provided that any dispute regarding the calculation of the Net Operating Profit would be determined by Price Waterhouse and that its determination would "be final, binding and conclusive upon the Company, Powderly and all other persons who may ... have any interest herein." It is clear from the language of the Agreement that the parties intended that Price Waterhouse have the final say as to the accounting of the Net Operating Profit. See *Campeau Corp. v. May Dept. Stores Co.*, 723 F.Supp. 224, 226–227 (S.D.N.Y.1989).

■ Powderly argues that even if this provision is construed as a binding arbitration clause, it is invalid because Price Waterhouse, as Keithley's accountant, is not a disinterested arbiter. It is not clear why this makes any difference, even if it is true. Powderly agreed to the selection of Price Waterhouse when he signed the Agreement. "When the parties have agreed upon a particular method of dispute resolution, it should generally be presumed fair." *Sheet Metal Workers Intern. Ass'n, Local No. 162 v. Jason Mfg.*, 900 F.2d 1392, 1398 (9th Cir.1990).

■ Powderly's more compelling argument is that the issues that form the basis of his claim have nothing to do with the accounting of MetraByte's Net Operating Profit. "[A]rbitration is a matter of contract and

---

1. Powderly does not indicate whether MetraByte or Keithley was responsible for increasing the discount rate.

2. The defendants argue that all of Powderly's claims fall within the scope of the arbitration clause. In the alternative, the defendants contend that if only the breach of contract claim is sent to arbitration, the Complaint should still be dismissed because Counts II and III fail to state a claim.

3. The defendants cannot argue that Powderly breached the Agreement by failing to notify Keithley of the dispute before instituting suit. Powderly contends in his Complaint that the defendants breached the Agreement by diverting operating profits to Keithley before announcing MetraByte's five year profit earnings. Since, on a motion to dismiss, the allegations of the Complaint are accepted as true, the defendants' initial breach of the covenant of good faith and fair dealing relieved Powderly of any subsequent obligation to adhere to the notice requirement of the Agreement.

a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Under the Agreement, the Net Operating Profit is defined as "the annual gross sales revenue of the Company less all sales returns, allowances and discounts, as determined in accordance with generally accepted accounting principals [GAAP] consistently applied." The Agreement, in other words, requires only that Price Waterhouse certify that Keithley's figures were compiled in compliance with GAAP. There was no agreement to arbitrate claims of wrongdoing that might not be detectable by GAAP or even related to the rules of GAAP.

Powderly's allegations against Keithley and MetraByte, read in the most indulgent light possible, do not concern questions of accounting. Instead, Powderly alleges that the defendants manipulated MetraByte's business in order to insure that the Net Operating Profit would fall short of the bonus target. This manipulation, Powderly alleges, violated the covenant of good and faith and fair dealing, not because it violated GAAP, but because it was done to deprive Powderly of his rights under the Agreement.[4] Inasmuch as Powderly's allegations challenge the defendants' business practices regarding MetraByte, and not the integrity of the accounting techniques used to calculate the Net Operating Profit, the defendants' motion to compel arbitration will be denied.[5]

Defendants next argue that Count II, alleging that Keithley tortiously interfered with Powderly's contract, must be dismissed because Keithley cannot be held to interfere with its own contract.[6] Powderly alleges that Keithley "intentionally sought to impair ... Powderly's rights under the Agreement by, among other things, diverting profits of MetraByte to other Keithley divisions and/or subsidiaries and improperly charging expenses to MetraByte attributable to Keithley and/or its subsidiaries." Powderly claims that between 1989 and 1993 the discount rate on sales offered to Keithley's overseas subsidiaries was increased from 15% to 40%, resulting in an improper loss to MetraByte. Because a party cannot "be liable for tortious interference with its own contract," *Gram v. Liberty Mutual Ins. Co.,* 384 Mass. 659, 663, n. 3, 429 N.E.2d 21 (1981), any claim of interference with the Agreement by Keithley after the merger in 1991 is clearly barred. The Complaint, however, also alleges that Keithley tortiously interfered with Powderly's employment contract prior to the merger. As to these allegations, Keithley, as a parent corporation, "is privileged to 'interfere' with the contractual business of its subsidiary ... provided [that Keithley as] the privileged defendant ... act[s] with the purpose of protecting [its] own legitimate economic interests, and without actual malice directed toward the plaintiff." *Charles River Data Systems, Inc. v. Oracle Complex Systems Corp.,* 788 F.Supp. 54, 59 (D.Mass.1991). When a plaintiff alleges intentional interference "against a privileged defendant the plaintiff must show that the defendant acted with actual malice, in the sense of malevolence, spite or ill will." *Id.* at 60.[7]

On a motion to dismiss, Powderly's Complaint must be read by indulging all inferences in his favor. *Vartanian v. Mon-*

---

4. A business decision might be reasonable under GAAP and, at the same time, be unfair to Powderly.

5. Because I hold that Powderly's claims are not subject to the terms of the arbitration clause, I need not reach Powderly's second argument that Keithley has no standing to demand arbitration because it was not a party to the Agreement. Moreover, the parties agree that Keithley is liable for any breach of the Agreement by reason of its having absorbed MetraByte. With the obligations go the rights.

6. Powderly and MetraByte entered into the Agreement on February 14, 1989, while MetraByte was a legally independent subsidiary of Keithley. MetraByte was merged into Keithley in September 1991. In November 1993, Powderly was denied his bonus.

7. Outside of a parent/subsidiary relationship only an improper motive or means must be alleged. *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 816, 551 N.E.2d 20 (1990).

*santo Company,* 14 F.3d 697, 700 (1st Cir. 1994). Powderly alleges that Keithley mismanaged MetraByte's business, mischarged expenses and diverted revenues, with the deliberate purpose of depriving him of his bonus.[8] These allegations, if believed, are sufficient to establish that Keithley maliciously interfered with Powderly's Agreement with MetraByte. Defendants' motion to dismiss Count II will thus be denied to the extent that it seeks to bar claims of contractual interference arising prior to the merger.

▌ Finally, defendants argue that Count III, alleging a violation of G.L. c. 93A against both MetraByte and Keithley, must be dismissed because the claim arises out of an employee/employer relationship. The defendants contend that under *Manning v. Zuckerman,* 388 Mass. 8, 12, 444 N.E.2d 1262 (1983), such disputes are outside the scope of G.L. c. 93A. Powderly responds that he was no longer an employee of MetraByte when he was denied his bonus.[9] In *Manning,* however, the Supreme Judicial Court held simply that any claim arising from the employee/employer relationship was not actionable under G.L. c. 93A. *Manning* did not impose a condition that the employment relationship be ongoing. As Powderly's claim to his bonus rests on the very Agreement that created an employee/employer relationship,[10] his Chapter 93A claims against MetraByte arise from that relationship, and are barred.[11]

▌ Powderly, however, also alleges that Keithley wrongfully interfered with his employment contract with MetraByte prior to the merger, that is, prior to his becoming a Keithley employee. To that extent, his Chapter 93A claims as to Keithley survive, for the same reason that Keithley's conduct towards MetraByte prior to the merger properly states a claim for tortious interference with Powderly's contract.

### ORDER

For the foregoing reasons, the defendants' motion to compel arbitration is *DENIED.* Defendants' motion to dismiss Count II is *ALLOWED,* in part, as to any allegations of tortious interference against Keithley after the September 1991 merger, and *DENIED,* in part, as to any allegation against Keithley regarding premerger interference with Powderly's contract. The motion to dismiss Count III is *ALLOWED* as to the defendant MetraByte and *DENIED* as to the defendant Keithley's premerger conduct.

SO ORDERED.

---

**8.** Because this matter is before the court on a motion to dismiss I must decline the invitation to assess the factual sufficiency of Powderly's claims in this regard.

**9.** MetraByte terminated Powderly's employment in May of 1990.

**10.** Powderly, in his Complaint, characterizes the defendants as "engage[ing] in unfair and deceptive conduct including, among other things, attempting to destroy and impair plaintiff's rights under the Agreement."

**11.** Powderly's situation is distinguishable from that of the plaintiff in *Mitchelson v. Aviation Simulation Technology, Inc.,* 582 F.Supp. 1, 2 (D.Mass.1983). Mitchelson's employment contract provided that he could obtain flight simulators from his employer in the event that his employment was terminated by either party. Mitchelson alleged that after he terminated his own employment, the employer violated G.L. c. 93A by coercing him into signing an amendment to the agreement when he tried to assert his contractual right to purchase the simulators. Mitchelson's Chapter 93A claim thus was only incidental to the employment relationship. The defendant's actions in *Mitchelson* would have violated G.L. c. 93A whether or not Mitchelson had ever been an employee. In contrast, Powderly's rights are based solely on the compensation package guaranteed by the Agreement. But for the employment relationship, Powderly would have no claim.