United Truck Leasing Corp. *v.* Geltman.

UNITED TRUCK LEASING CORPORATION *vs.* RONALD D.
GELTMAN & another.[1]

Middlesex. November 6, 1989 - March 7, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Unlawful Interference. Malice. Evidence,* Presumptions and burden of
proof.

Discussion of the elements of the torts of intentional interference with a
contract and intentional interference with a prospective contractual re-
lation. [812-813]

The court stated that, consonant with the Restatement (Second) of Torts
§§ 766 & 766B, a plaintiff must plead and prove as an element of the
tort of intentional interference with a contract or intentional interfer-
ence with a prospective contractual relationship, that the defendant's
conduct was improper, that is, that the act of interference was commit-
ted with an improper motive toward the plaintiff or by improper means.
[814-817]

At the trial of a claim for intentional interference with a contract, the
judge correctly directed a verdict for the defendant where the evidence
did not support a finding that the defendant's acts of interference were
committed with an improper motive toward the plaintiff or by improper
means. [817]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 8, 1980.

The case was tried before *J. Harold Flannery,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Harold Meizler (John H. Bernstein* with him) for the
plaintiff.

*William H. Clancy* for the defendants.

WILKINS, J. We granted further appellate review (see
*United Truck Leasing Corp.* v. *Geltman,* 26 Mass. App. Ct.
847 [1989]), to consider what elements a plaintiff must prove

---

[1]Industrial Fleet Management, Inc.

in order to present a jury question (1) on a claim of intentional interference with a contract and (2) on a claim of intentional interference with a prospective contractual relation. The trial judge and the Appeals Court have disagreed on one crucial element of the tort of intentional interference with a contract. The trial judge directed a verdict for the defendants on that claim, and the Appeals Court has concluded that he should not have done so. *Id.* at 853-854. We granted the defendants' application for further appellate review of this issue.

It is common ground that, in an action for intentional interference with a contract, the plaintiff must prove that (1) he had a contract with a third party, (2) the defendant knowingly induced the third party to break that contract, and (3) the plaintiff was harmed by the defendant's actions. See *id.* at 852, and cases cited. The disputed point is whether the plaintiff must also prove something more, namely, that a defendant's conduct was wrongful or improper in some way. The trial judge recognized that our cases have said that justification for one's conduct is an affirmative defense to be proved by the defendant (see, e.g., *Owen* v. *Williams*, 322 Mass. 356, 360 [1948]), but he concluded, relying on principles set forth in the Restatement (Second) of Torts § 767 (1979), that, before the matter of justification need be faced, a plaintiff must prove that what the defendant intentionally did was "wrongful or improper in its means or its ends."

The Appeals Court noted that the Restatement (Second) of Torts had moved away from the position taken in the Restatement of Torts § 766 (1939) which, in the Appeals Court's view, more accurately stated the law of the Commonwealth. *Id.* at 852 & n.2.[2] That court also noted that

---

[2]The Appeals Court said: "In Massachusetts, a plaintiff has made out a prima facie case on the tort when he submits evidence that would warrant findings that the defendant intentionally interfered with the plaintiff's existing contract with a third party to the plaintiff's damage. Justification and privilege are considered affirmative defenses. The plaintiff does not have to meet these defenses in his affirmative case. Rather, it falls to the defendant to plead and prove that his conduct was either justified or privileged." *Id.* at 852.

certain other States had adopted a requirement of proof of wrongful conduct beyond the intentional interference itself. *Id.* at 852 n.2. The Appeals Court was not considering whether a change or redefinition of the law of the Commonwealth was called for. It simply applied the Massachusetts law, as it perceived it, and ordered a new trial on the claim of intentional interference with a contract.

Our cases have been imprecise on the elements of the torts involved in this case. There is arguably support for the positions taken by both the trial judge and the Appeals Court. Before we undertake to redefine and, we hope, clarify the torts, we shall briefly outline the circumstances that gave rise to the claims in this case.

Geltman, an officer of the defendant corporation, counsels companies that lease trucks. He educates his customers about the truck leasing business so that they may obtain more favorable leases. He helps in soliciting and critiquing bids from lessors and sometimes negotiates leases. Geltman also attempts to obtain changes in existing leases that will be beneficial to his clients. The plaintiff (United) operates a large truck leasing company in the Commonwealth.

United's claim for intentional interference with a contract is based on its claim that Geltman caused one of his customers (Universal Fixtures) to break its contract with United and to enter into a lease with Flexi-Van, the lessor with whom Universal Fixtures had had a lease prior to its lease with United. It is clear, on the plaintiff's evidence, that Geltman knew of the existing lease between United and Universal Fixtures and recognized the possibility that, if Universal Fixtures signed on with Flexi-Van, United might sue Universal Fixtures for breach of contract. There was evidence that United lost $60,000 because of Universal Fixtures's repudiation of the contract.

United's claim for intentional interference with prospective contractual relations concerns United's inability to obtain a lease with Matthew's Salad House (Matthew's). United had been trying to arrange a lease with Matthew's for about six

years.[3] Matthew's retained Geltman to advise it concerning the lease of refrigerated trucks. Geltman did not invite United to bid on the Matthew's account, although there were good reasons why United might have been invited to do so. When asked by a United representative why he had not invited United to bid, Geltman replied that other leasing companies gave him leads for new accounts but that United did not. After learning the amount of its competitor's bid, United did bid on the Matthew's account but was not awarded the account.[4] The trial judge directed a verdict for the defendants on this claim. The Appeals Court agreed with his ruling. *United Truck Leasing Corp.* v. *Geltman, supra* at 855-856. United has sought, and we have granted as to United, limited further appellate review of the order directing a verdict against United on its claim for interference with its prospective contractual relations with Matthew's.

We start with the observation that malice, in the sense of ill will, has not been a true element of the torts of intentional interference either with a contract or with a prospective contractual relation. See *Pino* v. *Trans-Atl. Marine, Inc.,* 358 Mass. 498, 504 (1970); Restatement of Torts § 766 comment m, special note (1939). Some of our cases have used the word but, in the same breath, have eliminated any requirement of independent proof of malice. See *Keegan* v. *O'Donnell,* 310 Mass. 346, 350 (1941) ("intentional interference with the plaintiff's business, in the absence of any legal justification, was malicious in law and entitled the plaintiff to damages"); *Anderson* v. *Moskovitz,* 260 Mass. 523, 526

---

[3]At one point in its opinion, the Appeals Court says that United had called on Matthew's "six times" and concludes that the evidence did "not suffice to establish a prospective business relationship sufficient to support the claimed interference." *Id.* at 855. There was evidence that United had been trying to obtain Matthew's as a customer for six years, but none tending to show that United had called on Matthew's only six times.

[4]The Appeals Court says that the plaintiff's evidence was that the United bid was higher than the bid of the company that received the Matthew's account. *Id.* at 855. There was, however, evidence that the United bid was lower. Contrary testimony, from the same witness, that United's bid was higher seems to be an error in transcription.

(1927) ("Malice is proved if it appears that the defendant with knowledge of the contract intentionally and without justification induced one of the contracting parties to break it"); *Berry* v. *Donovan*, 188 Mass. 353, 356 (1905) ("[a]n intentional interference . . . without lawful justification, is malicious in law"). This formulation of the tort, intentional interference without privilege to do so, is generally consistent with the rule stated in the first Restatement,[5] and, as we have said, guided the Appeals Court in reaching its decision.

More recently, we have expressed the view that a plaintiff must prove, among other things, "the defendant's intentional and malicious interference with" a business relationship or contemplated contract of economic benefit. See *ELM Medical Laboratory, Inc.* v. *RKO Gen., Inc.*, 403 Mass. 779, 787 (1989). The court thus required proof not only of intentional conduct but also of malicious conduct. Although we now abandon the word malicious in the description of any element of these torts, we affirm our recent statement that something more than intentional interference is required. In *Comey* v. *Hill*, 387 Mass. 11, 19 (1982), we described the tort as requiring proof of both intentional and malicious interference. We characterized the element of wrongful conduct, supporting submission of the case to the jury, as conduct by the defendant intended to discriminate against the plaintiff because of his age. *Id.* at 19-20.[6]

---

[5]Section 766 of the Restatement of Torts reads as follows: "Except as stated in Section 698 [contract to marry], one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

It should be noted that the first Restatement required that the conduct be undertaken "purposely" to cause one not to perform a contract, and does not use the word "intentionally."

[6]Although the *Comey* opinion describes the tort in that case as interference with an advantageous relationship, *id.*, the wrong was in fact interference with the plaintiff's existing contract of employment. We have not consistently distinguished between the two torts, and, in view of what we say here, we need not make any such distinction with respect to what conduct by a defendant is actionable. Of course, whether particular conduct is improper depends on the circumstances. The existence of a contract, and not

In this opinion, we adopt the word "improperly" in place of the word "maliciously." In doing so we agree that more than intentional interference must be established. "Improperly" is the word used in the Restatement (Second) of Torts § 766 (1979)[7] ("intentionally and improperly interferes"). It is the concept the trial judge relied on in directing verdicts in this case. We accept it, as does the Restatement (Second) of Torts, as an element both in the proof of intentional interference with performance of a contract (§ 766) and in the proof of intentional interference with a prospective contractual relationship (§ 766B).

In deciding what conduct is improper, we accept the standard expressed in the out-of-State cases cited in the Appeals Court opinion. See 26 Mass. App. Ct. at 852 n.2, citing *Top Serv. Body Shop, Inc.* v. *Allstate Ins. Co.,* 283 Or. 201, 209-210 (1978) ("In summary, [a claim of tort liability for intentional interference with contractual or other economic relations] is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of interference itself. Defendant's liability may arise from improper motives or from the use of improper means. . . . No question of privilege arises unless the interference would be wrongful but for the privilege; it becomes an issue only if the acts charged would be tortious on the part of an unprivileged defendant");[8] *Leigh Furniture & Carpet Co.* v. *Isom,* 657 P.2d 293, 304 (Utah 1982) ("improper purpose or by im-

---

just the existence of a prospective relationship, might be a factor in determining whether particular intentional conduct was improper.

[7]Section 766 reads as follows: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

[8]The "plaintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant had a duty of non-interference; *i.e.,* that he interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff." *Straube* v. *Larson,* 287 Or. 357, 361 (1979).

proper means");[9] *Blake* v. *Levy*, 191 Conn. 257, 262 (1983) ("the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means"). In *Comey* v. *Hill, supra,* we applied this standard by recognizing liability where the defendant's intentional interference with the plaintiff's employment contract was based on unfair age discrimination, an improper motive.

The plaintiff has not argued that, if the trial judge's requirement of proof of improper interference is applied, the evidence presents a jury question. The evidence does not warrant a finding that Geltman violated a statute or a rule of common law. There is no evidence that he used threats, misrepresented any facts, defamed anyone, or used any other improper means in relation to either the existing contract or the prospective one.[10] His apparent motives were to benefit his customers and himself financially. There is not enough evidence to warrant a finding that his real motive in these matters was to hurt United.

The judge properly allowed the motion for a directed verdict on the claims we have considered in this appeal.

*Judgment of the Superior
Court affirmed.*

---

[9]In deciding that a plaintiff should prove that the defendant acted improperly, the Utah court noted: "The problem with the prima facie-tort approach is that basing liability on a mere showing that defendant intentionally interfered with plaintiff's prospective economic relations makes actionable all sorts of contemporary examples of otherwise legitimate persuasion, such as efforts to persuade others not to eat certain foods, use certain substances, engage in certain activities, or deal with certain entities. The major issue in the controversy — justification for the defendant's conduct — is left to be resolved on the affirmative defense of privilege. In short, the prima facie approach to the tort of interference with prospective economic relations requires too little of the plaintiff." *Id.* at 303.

[10]Section 767 of the Restatement (Second) of Torts sets out seven general factors to be considered in determining whether interference is improper. These factors may be helpful in determining whether an act of interference was committed with an improper motive or by improper means.