Dortch, J.
This action is before the court on plaintiffs motion for summary judgment on defendant Steven Traverso’s counterclaim. The counterclaim alleges in Count I intentional interference with an advantageous business relationship, in Count II abuse of process, in Count III defamation, and in Count IV unfair business practices in violation of to G.L.c. 93A. For the reasons outlined below, plaintiffs motion is ALLOWED.
BACKGROUND
The undisputed facts are as follows:
In 1992, Market Basket, Inc. (“Market Basket”) discovered that, over a five-year period, approximately $850,000 worth of cigarettes had been stolen from its Methuen store. Market Basket confronted the manager of the Methuen store, Robert Drouin (“Drouin”), about the thefts and Drouin subsequently confessed to stealing approximately 60,000 cartons of cigarettes. In his confession, Drouin specifically implicated Angelo M. Traverso, a bread delivery driver, in the thefts. According to Drouin, he would leave the cases of cigarettes by the back door of the Methuen store so they could be picked up by Angelo Traverso when Traverso delivered bread to the store in the morning. Bread delivery drivers delivered bread to the stores at approximately 5:00 a.m., before the stores were open, and had their own set of keys for this purpose.
Angelo Traverso worked for his brother, Steven Traverso (“Traverso”), who operated as an independent distributor for Middle East Bakery, Inc. (“Middle East”). Upon learning of the thefts, Market Basket called Middle East and informed them that they would no longer purchase bread from Middle East because of the thefts. Subsequently, Market Basket agreed to resume its business relationship with Middle East on •the condition that Middle East replace Traverso as its distributor. Middle East replaced Traverso with another bread distributor. Market Basket later filed this civil action against all of the above-named defendants to recover the losses from the cigarette thefts. Traverso has counterclaimed against Market Basket alleging intentional interference with an advantageous business relationship, abuse of process, defamation and violation of G.L.c. 93A.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.RCiv.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to a judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Further, “[a] complete failure of proof concerning an essential element of the non-moving parly’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving pariy. Id., at 711 (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Count I — Intentional Interference with an Advantageous Business Relationship
Count One of Steven Traverso's counterclaim alleges an intentional interference with an advantageous business relationship. A claim for such interference is recognized within the Commonwealth and is an extension of the common law tort of intentional interference with a contractual relationship.[1] Owen v. Williams, 322 Mass. 356, 362 (1948). To succeed on a claim for intentional interference with an advantageous business relationship, the plaintiff must prove:
1. the existence of the business relationship,
2. that the defendant knowingly interfered with the business relationship,
3. that the defendant’s interference, in addition to being intentional, was improper in motive or means, and;
4. that the plaintiff was harmed by the defendant’s activities.
Wright v. Sherman Hospital for Crippled Children, 412 Mass. 469, 476 (1992); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass 262, 272 (1991); *182 United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990).
Market Basket moves for summary judgment on Count One of Traverso’s counterclaim asserting that even if Traverso could show that Market Basket intentionally interfered with Traverso’s relationship with Middle East, such an interference was in no way improper.
The Supreme Judicial Court adopted the word “improper" in Geliman, supra, rejecting early cases which had sporadically used words such as “malicious” or “ill will’’ to define the necessary level of interference. See Geltman at 814-15 and cases cited therein. In adopting the word “improper,” the Court noted that “[although we now abandon the word malicious in the description of any element of these torts, we affirm our recent statement that something more than intentional interference is required.” Geltman at 815.
It is clear in light of Geliman that a showing of improper means or motive is an essential element of the plaintiffs prima facie case. Therefore, if Traverso cannot point to any evidence which would allow a reasonable jury to find an improper motive or means on the part of Market Basket, summary judgment must be granted.
While it is true that “[wjhere a party’s state of mind or motive is an issue, summary judgment is disfavored,” G.S. Enterprises, Inc. v. Falmouth Marine, Inc. at 276, n.4 (citations omitted), this “does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action for which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claims.” National Association of Government Employees, Inc. v. Central Broadcasting Co., 379 Mass. 220, 231 (1979) (quoting Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975), cert denied, 425 U.S. 904 (1976).
The Restatement (Second) of Torts, Section 767[2] sets forth a number of factors to be considered in determining if an improper means or motive has been employed. These include:
1. the nature of the actor’s conduct,
2. the actor’s motive,
3. the interests of the other with which the actor’s conduct interferes,
4. the interests sought to be advanced by the actor,
5. the social interests in protecting the freedoms of action of the actor and the contractual interests of the other,
6. the proximity or remoteness of the actor’s conduct to the interference, and,
7. the relations between the parties.
Despite the fact that Traverso cites these factors in his opposition to this motion, he has failed to offer any evidence which would allow a reasonable jury to conclude that Market Basket’s means or motive were in any way improper. Two other portions of the Restatement are also instructive. Section 770 addresses examples of situations where an actor’s motives are clearly not improper. Illustration #3 is particularly appropriate:
The A corporation conducts a business dealing with the public. B, an employee or the corporation, repeatedly appears on duty in an intoxicated condition, in a manner damaging to its business relations. C, another employee, for the protection of the corporation, reports this to the manager and urges him to discharge B. He does so. C’s action is not improper.
Also on point is comment b to Section 772 of the Restatement:
There is of course no liability for interference with a contract or a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshalled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.
In the case at bar, there were only two acts by Market Basket upon which Traverso could hope to predicate an action of intentional interference with a business contract. The first act is Market Basket’s communication to Middle East that Traverso’s drivers had been stealing cigarettes. The second act is Market Basket’s insistence that Middle East not use Traverso’s trucking company to deliver bread to Market Basket’s stores.
With regard to the communication, Section 772 makes it clear that such a communication is proper. According to the affidavits of both Leopoldo Guggenheim, Chairman of the Board of Directors for Middle East, and William Marsden, Vice President of Operations for Market Basket, Market Basket informed Middle East that a driver from Middle East had been stealing cigarettes from Market Basket stores. Both affidavits clearly state that Marker Basket never directly accused Steven Traverso of stealing cigarettes or of participating in or benefiting from the thefts. Market Basket has asserted that it communicated the information to Middle East in an effort to prevent future thefts and Traverso has presented no evidence to the contrary from which a reasonable jury could conclude that Market Basket had an improper motive in communicating this information.
With regard to Market Basket’s insistence that Traverso’s trucking company not be used to deliver bread to Market Basket stores, this too was proper. As Marsden’s affidavit indicates, Market Basket made this demand because it was no longer willing to allow Traverso’s drivers to have keys to its stores, a requirement for early morning bread deliveries. Marsden asserts that its motive was to prevent future thefts. This motive is entirely proper. Geltman, 406 Mass. at *183 817. (Directed verdict was proper, since there is no improper motive when defendant’s “apparent motives were to benefit his customers and himself financially.”)
Traverso also argues that the alleged interference must be improper because there could be no proper justification for the interference under the circumstances. In short, Traverso is arguing that the interference is inherently improper solely by virtue of the fact that a business relationship was interfered with. Even if the court were to agree, which it does not, that there was no justification for the interference, Traverso would still be required to show that the interference was improper in some fashion. Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 50-52 (1991) (“A claim of tort liability for intentional interference with a contract is not made out unless the interference resulting in injury is wrongful by some measure beyond the fact of the interference itself." (citing Geltman at 316)).
Finally, Traverso’s contention that Comey v. Hill, 387 Mass. 11 (1982), dictates a different result is unavailing. In Comey, the defendant sought damages for intentional interference with an advantageous business relationship after the defendant manufacturer caused the plaintiff, a sales representative for a company that distributed the defendant’s products, to be fired. Id. at 13-14. There, the plaintiff alleged that his firing was motivated by an improper motive, specifically age discrimination. Id. Comey, however, is distinguishable from the current case. In Comey, the plaintiff was able to produce evidence to substantiate his claim of age discrimination. Both Comey and another sales representative (who had also been fired) testified that the defendant admitted that the representatives were fired because of their age. Although the defendant introduced evidence that the firings were related to sales performance, and not age discrimination, the court held that there was sufficient evidence that the jury could find an improper motive. Such is not the case here. Traverso has presented no evidence which could lead a reasonable jury to conclude that Market Basket had an improper motive. For this reason, Market Basket’s motion for summary judgment on Count I of Traverso’s counterclaim is ALLOWED.
Count II — Abuse of Process
CountTwo ofTraverso’s counterclaim alleges abuse of process by Market Basket arising from Market Basket’s prosecution of this case. Traverso alleges that there is no theory upon which Market Basket can recover against him for the theft of the cigarettes and that this action is therefore an abuse of process.
To prevail on an action for abuse of process the plaintiff must show that “the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed” (citing Quaranto v. Silverman, 345 Mass. 423, 426 (1963) (quoting Gabriel v. Borowy, 324 Mass. 231, 236 (1949))).
In the present case, Market Basket has filed suit in an attempt to recover damages for approximately $850,000 worth of stolen cigarettes. Such a recovery is the very purpose for which such a civil suit would be initiated. Traverso’s sole contention on this point is that he cannot be held liable for the thefts because the drivers in question were not employees of his, but were independent contractors. Therefore, argues Traverso, Market Basket is proceeding on a claim which it knows cannot succeed.
It should be noted that this court has previously rejected Traverso’s motion for summary judgment on this very point which, by implication, means that Market Basket’s claim against Traverso has enough merit to reach a factfinder. However, even were the court to accept Traverso’s contention that Market Basket was knowingly prosecuting a groundless claim against him, this would not, in and of itself, be sufficient to state a claim of abuse of process. Indeed, the Supreme Judicial Court has in no uncertain terms rejected the notion that filing a lawsuit which the party knows is groundless constitutes — in and of itself — an abuse of process. Beecy v. Puccianelli, 387 Mass. 589, 596 (1982) (“[Plaintiffs] suggest that we have held that the mere commencement of litigation which the person commencing the litigation knows or reasonably should have known to be groundless constitutes legal abuse of process without proof of any ulterior motive. We disagree.”).
Traverso has not only failed to offer any evidence of an ulterior motive by Market Basket in prosecuting this action, but has also failed to articulate what that improper motive might be. For the reasons stated hereinabove, the plaintiffs motion for summary judgment on Count Two of the counterclaim is ALLOWED.
Count III — Defamation
Count Three of Traverso’s counterclaim was withdrawn orally at a motion hearing on July 28, 1993.
Count IV — Unfair Practices Under Chapter 93A
Count Four of Traverso’s counterclaim alleges unfair business practices in violation of to G.L.c. 93A. This claim is based on the actions alleged in Counts I, II, and III. Since summary judgment is granted with respect to counts one and two and count three has been withdrawn, the Chapter 93A claim cannot stand. Therefore, summary judgment is ALLOWED with respect to Count IV.
ORDER
For the reasons stated hereinabove, Market Basket’s motion for summary judgement on Steven Traverso’s counterclaim is ALLOWED with respect to Counts I, II and IV. Count III has been withdrawn by defendant Steven Traverso.

 Indeed, the two torts are treated in the same manner and have essentially the same elements except for the need for a contract in the latter action. Geltman at 815, n.6.

 The Restatement’s treatment of intentional interference with the performance of a contractual relationship has been cited with approval in a number of Massachusetts opinions. See, generally, Geltman; Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41 (1991).