Carey, J.
Plaintiff, Hanna Paper Recycling, Inc. (Hanna) has filed suit against ZBR Publications, Inc. (ZBR) for breach of contract and violation of G.L.c. 93A and against American Paper Recycling Corp. (APR) and Kenneth Golden (Golden) for intentional interference with contractual relations (Counts II and III) and violation of G.L.c. 93A (Count IV). Defendants APR and Golden now move for partial summary judgment pursuant to Máss.R.Civ.P. 56 on Counts II, III and IV of the complaint on the grounds that any intentional interference with the contract was not induced by an improper motive or by improper means and the claim for violations of G.L.c. 93A relies totally on the unsupported allegations of intentional interference with contractual relations. Hanna opposes the motion on the grounds that APR and Golden’s offer to indemnify ZBR from liability to Hanna if ZBR entered into an agreement with APR constitutes an improper means and APR’s and Golden’s offer to discontinue further conversations with ZBR if Hanna agreed to do business with APR constitutes the improper motive of compelling Hanna to enter into a business relationship with APR unwillingly. For the following reasons, APR’s and Golden’s motion is allowed.
BACKGROUND
On or about May 15, 1987 APR and ZBR entered into a written agreement (the Contract) whereby APR agreed to purchase, collect and dispose of waste paper generated by ZBR. At the time, ZBR allegedly had a valid contract with Hanna whereby ZBR agreed to sell and Hanna agreed to purchase salvageable waste paper. In January 1987, negotiations began between ZBR and APR. According to Golden’s affidavit, a ZBR representative contacted Golden and Golden visited the ZBR plant in February 1987. James Bartlett (Bartlett) of ZBR contacted Hanna on March 13, 1987 and told Hanna that ZBR had decided to “go with APR.” Hanna notified APR and Golden of its alleged contract with ZBR on March 18, 1987 and demanded that APR cease interference with the Hanna/ZBR contract. APR sent a service agreement to ZBR on March 30, 1987. On April 16, 1987, Golden sent ZBR a letter which stated that APR would hold “ZBR harmless from any liability arising from the execution of this agreement, including Hanna Paper Recycling, Inc. and B.F.I.” In his deposition, Bartlett testified that ZBR gave Hanna notice on April 28,1987 thatits agreementwith Hanna would be terminated according to its terms pursuant to the March 13, 1987 notice.
In Plaintiffs Answers to Interrogatories, Hanna states that Golden approached Hanna in January 1987 and offered not to take any further steps to obtain a certain Hanna account if Hanna would agree to do business with APR.
The Contract entered into by ZBR and APR contains an indemnification clause at paragraph 3 which reads “indemnity shall include and shall not be limited to any cause of action brought by any previous recycling or rubbish company which ZBR might have dealt with.”
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Máss.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion *588 must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
In order to establish a claim for intentional interference with contractual relations, Hanna must show (1) that Hanna had a contract with ZBR; (2) that APR and Golden knowingly induced ZBR to break that contract; (3) that APR and Golden’s interference was improper in motive or means; and (4) that Hanna was harmed by APR and Golden’s actions. G.S. Enterprises, inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991) citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990). For the purposes of this motion, APR and Golden argue only that Hanna cannot show improper motive or means, accordingly only that argument is addressed here.
In deciding what conduct constitutes improper motive or means, the Massachusetts Supreme Judicial Court accepts the standard expressed in Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 582 P.2d 1365 (Ore. 1978). United Truck Leasing Corp. v. Geltman, supra at 816. In Top Serv. Body Shop, Inc., the court stated that a party’s “motive or means may be wrongful by reason of statute or other regulations or a recognized rule of common law or perhaps an established standard of trade or profession.” Top Serv. Body Shop, Inc. v. Allstate Ins. Co., supra at 1371. Improper means includes violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation or disparaging falsehood. Id., note 11. Section 767 of the Restatement (Second) of Torts sets out seven general factors to be considered in determining whether interference is improper. United Truck Leasing Corp. v. Geltman, supra at 817, note 10. The Massachusetts Supreme Judicial Court has stated that these factors may be helpful in determining whether an act of interference was committed with an improper motive or by improper means. Id.
In determining whether an actor’s conduct in intentionally interfering with a contract is improper or not, consideration is given to the following factors:
(a) the nature of the actor’s conduct,
(b) the actor’s motive,
(c) the interests of the other with which the actor’s conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor’s conduct to' the interference, and
(g) the relations between the parties.
Restatement (Second) of Torts §767 (1979).
Hanna claims that APR’s and Golden’s offer to indemnify ZBR from liability to Hanna for breach of the Hanna/ZBR contract constitutes an improper means sufficient to support Hanna’s claim for intentional interference with contractual relations. There are no Massachusetts cases and in fact no cases from any jurisdiction which consider whether an offer to indemnify a party to a contract for breach as a means of inducing such a breach is improper for the purposes of an intentional interference claim.
The court looks to the factors listed in the Restatement (Second) of Torts §767 to determine whether APR’s and Golden’s alleged interference was improper. We will look to the nature of APR’s and Golden’s conduct, and the social interests in protecting the freedom of action of APR and Golden and the contractual interests of Hanna. See Restatement (Second) of Torts, §767(a) (1979).
In considering the nature of APR’s and Golden’s conduct, the only improper means which appears applicable for this case is economic pressure.[1] See Id. The court considers whether APR’s and Golden’s offer to indemnify ZBR from liability against any litigation brought by Hanna for ZBR’s breach of contract may be considered economic pressure as a means of inducing a party not to deal with another. See id. “The question whether this pressure is proper is answered in the light of the circumstances in which it is exerted, the object to be accomplished by the actor, the degree of coercion involved, the extent of harm that it threatens, the effect upon neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor’s objective.” Id.
APR and Golden allegedly sought to advance their business interests by offering to indemnify ZBR thereby inducing ZBR to breach its contract with Hanna. The offer to indemnify was not so much an exertion of economic pressure on ZBR as an incentive for ZBR to contract with APR and Golden.
Next, the court appraises the social utility of the interests involved in the present case. The social interest in the competitive enterprise “may frequently require the sacrifice of the claims of the individuals to freedom from interference with their pursuit of gain.” Persuasion by suitable means is permissible in competition, however predatory means such as violence and fraud would be considered improper. Restatement (Second) of Torts, §767(e) (1979). APR and Golden are competitors of Hanna. It is not alleged that they employed predatory means such as violence and fraud in their alleged interference with the Hanna/ZBR contract. An offer to indemnify may have acted as a means to facilitate the formation of a contract between APR and ZBR, however it does not seem to rise to the *589 level of “predatory” means which the Restatement considers unsuitable in competitive enterprise. Id.
Hanna also argues that there is a question whether APR and Golden negotiated with ZBR in lawful and good faith competition, or whether they solicited ZBR with the improper motive of compelling Hanna unwillingly to enter into a business relationship with APR. Hanna claims that Golden approached Hanna in January 1987 and offered to discontinue further conversations with a certain account of Hanna’s if Hanna would agree to “do business” with APR. In determining whether the alleged interference was improper, it is important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other’s contractual relations. See Restatement (Second) of Torts, §767(b).
There is no evidence that the unnamed account is ZBR. Furthermore, Hanna does not present evidence sufficient to show that Golden’s and APR’s motive in negotiating and contracting with ZBR was to injure Hanna. Id. According to Hanna, Golden had already begun discussions with ZBR before he allegedly offered to do business with Hanna. The evidence does not support the claim that Golden and APR were even partially motivated by a desire to interfere with the ZBR/Hanna contract or by a desire to injure Hanna.
Accordingly, summary judgment is allowed for the defendants APR and Golden on Hanna’s claims for intentional interference with contractual relations (Counts II and III) as the evidence does not show that APR and Golden acted with an improper motive or by improper means.
As Hanna’s claims of violations of G.L.c. 93A, §2, §11 are based on the intentional interference with contractual relations allegations, summary judgment is allowed for APR and Golden as to Count IV of the complaint.
ORDER
Based on the foregoing, it is ORDERED that defendants American Paper Recycling Corp.’s and Kenneth Golden’s motion for partial summary judgment is ALLOWED as to Counts II, III and IV.

 Section 767 also considers physical violence, misrepresentations, criminal suits, and unlawful conduct in its discussion of the nature of the actor’s conduct. See Restatement (Second) of Torts, §767(a) (1979).