Whitehead, J.
The plaintiff, Lawrence W. Berman (“Berman”), brought this action against his business competitors, the defendants, Paul Winnick (“Winnick”) and Swerling, Milton, Winnick, Public Insurance Adjusters, Inc. (“Swerling Insurance Adjusters”), claiming that the defendants intentionally interfered with his contractual relations and violated G.L.c. 93A. The defendants now move for summary judgment, and for the reasons outlined below, their motion is ALLOWED.
UNDISPUTED FACTS
The material undisputed facts are as follows:
On Sunday, November 23, 1993 at approximately 2:00 a.m., Ms. Lorna McKenzie-Pollock awoke to find a fire in progress at her condominium building (the “Condominium”), co-owned by Cherie Koller-Fox and Everett Fox (the “Foxes”) and located at 87-89 Abbotsford Road, Brookline, Massachusetts. She exited the condominium, watched the fire fighters attempt to extinguish the fire, and spent the remainder of the night at her neighbor’s house directly across the street.
At 7:00 a.m., Berman encountered Ms. McKenzie-Pollock at her neighbor’s house, identified himself as a public adjuster, and asked if he could assist her. After conversation, Berman presented her with a form contract (the “First Berman Contract”) which provided for a fee amounting to 10% of the insurance proceeds she would receive, in exchange for his services. Ber-man informed her that signing the contract was “just a formality” because under the law she had seventy-two (72) hours to cancel. Ms. McKenzie-Pollock required Berman to add this cancellation term to the contract and then signed it.
Moments after Ms. McKenzie-Pollock had affixed her name to the First Berman Contract, Winnick approached the two, introduced himself to Ms. McKenzie-Pollock, and asked if he could help her. Ber-man attempted to deflect Winnick’s solicitous attempts, stating “she’s already signed with me — she can’t talk to you.” After hearing this comment, Ms. McKenzie-Pollock informed both Berman and Winnick that she wanted to “shop around” and to speak to Winnick, which she did later in the day.
On the next morning, Ms. McKenzie-Pollock met with Berman where, in his presence, she physically ripped up the First Berman Contract. On the following day, she spoke with the Foxes about selecting an adjuster. They indicated a desire to retain Berman, with Winnick as their second choice, but left the final decision to Ms. McKenzie-Pollock.
On Wednesday, December 1, 1993, Ms. McKenzie-Pollock met with and signed a second contract with Berman (the “Second Berman Contract”), who reduced his fee to 5% and assured her that he could “get her in her house” in 10 weeks.
Two days later, on Friday, December 3, 1993, Ms. McKenzie-Pollock’s friend, Murray Sharkey, under her instruction, telephoned Berman and told him that the Second Berman Contract was unacceptable. Later on that day, Ms. McKenzie-Pollock herself called Berman to terminate the Second Berman Contract, but since he was out of the office, she instead notified his *307 secretary of the termination and told her she would send a fax to confirm. Although Ms. McKenzie-Pollock was unsuccessful in her attempt to send a fax to Berman, she did, on the very next day, Saturday, December 4, 1993, send to Berman a termination letter by mail:
Dear Larry:
As per our conversation this morning I am hereby cancelling my contract with you signed 12/1/93. As you are aware I have 72 hours to do this in accordance with Massachusetts law. Any prior agreements between us are now null and void.
Thank your for your efforts on my behalf.
On December 9, 1993, Ms. McKenzie-Pollock and the Foxes entered into a written contract whereby Winnick agreed to serve as their insurance adjuster. Thereafter, Berman brought this action.
DISCUSSION
Summary Judgment
Summary judgment shall be granted where (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating these elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Intentional Interference with Contractual Relations (Count I)
The Supreme Judicial Court has recognized that to establish a claim for intentional interference with contractual relations, the plaintiff must show that (1) he had a contract with a third party (2) the defendants knowingly induced the third party to break the contract (3) the defendants’ interference was intentional and improper in motive or means, and (4) the plaintiff was harmed by the defendants’ interference. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990).
The Existence of a Contract
The first issue before the court is whether Berman has established the initial essential element of his claim — that he had a valid contract with Ms. McKenzie-Pollock. Winnick contends that both Berman Contracts were void ab initio because they both failed to include the exact 72-hour cancellation language required in home-service contracts by G.L.c. 93, §48. Berman contends that §48 does not apply to public adjusters and their contracts. The court need not reach the question. Even if §48 applies to public adjusters and their contracts, the statute would have rendered the Berman Contracts only voidable, rather than void ab initio.
When a court determines that a contract is “contrary to the law, it has discretion to determine the rights and liabilities of the parties as a matter of law.” Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. 39, 55 (1991) (citing Town Planning & Eng’r Assocs., Inc. v. Amesbury Specialty Co., 369 Mass. 787, 745-47 (1976)). ‘The court may declare the contract void ab initio, dealing with it as if it had never been made.” Id. Moreover, along with the discretion to declare contracts void ab initio, the court must consider “fairness and public policy.” Id.
The following standard set out in Lawrence v. Falzarano, 380 Mass. 18, 22 (1980), generally governs the issue of whether a court should deem a contract formed in violation of a statute voidable or void ab initio:
If the statute does not declare a contract made in violation of it to be void, and if it is not necessary to hold the contract void in order to accomplish the purposes of the statute, the inference is that it was intended to be directory, and not prohibitory of the contract. . .
Id. (quoting Bowditch v. New England Mut. Life Ins. Co., 141 Mass. 292, 295 (1886); Brousard v. Melong, 322 Mass. 560, 561 (1948)).
Under the Lawrence v. Falzarano standard, it would appear that a contract formed in violation of G.L.c. 93, §48 is voidable, rather than void ab initio. First, the statute does not declare that a contract without the seventy-two (72) hour cancellation language shall be void. Second, it is unnecessary to void contracts made with public adjusters in order to accomplish the statute’s purpose of protecting consumers. See Resnic v. Toleas, 56 Mass.App.Div. 54, 61 (1975) (“the statute [G.L.c. 93, §48]... is . . . designed to protect consumers usually in situations where a salesman or product representative solicits at the consumer’s home”). The statute’s purpose presumably is to protect the consumer by enabling her to avoid permanent disadvantageous contracts due to high-pressure salesmen, by giving her a period of time both to deliberate over the *308 contract’s terms and to compare alternatives that may arise. The statute ensures that consumers are protected even if the required cancellation language is absent from the contract, because it tolls the running of the seventy-two (72) hour cancellation period until the omitted term is provided. Put simply, a consumer has the option of terminating such a contract until the salesman provides the requisite language, and rendering the contract void ab initio would provide the consumer with no additional protection.
Additionally, to render a contract formed in violation of G.L.c. 93, §48 void ab initio may actually hinder the statute’s purpose in instances where a consumer strikes a good bargain with a salesman who fails to include the requisite cancellation language. In that case, the statute would not protect the consumer, but rather would rob her of the benefit of her bargain. “Courts do not go out of their way to discover some illegal element in a contract or to impose hardship upon the parties beyond that which is necessary to uphold the policy of the law." Lawrence v. Falzarano, 380 Mass at 23 (quoting Nussenbaum v. Chambers & Chambers, Inc., 322 Mass. 419, 422 (1948). Thus, the court concludes that G.L.c. 93, §48 does not require that a contract which omits the requisite language be deemed void ab initio; for purposes of this motion, Berman has established that he had a contract with Ms. McKenzie-Pollock.[1]
Improper Motive or Means
However, Berman has failed to establish another essential element of his claim — that the defendants’ conduct was improper in either motive or means. United Truck Leasing Corp. v. Geltman, 406 Mass. at 816 (Court adopted language in Restatement (Second) of Torts §766 (1979) that the defendant must “intentionally and improperly interfere” to establish a claim).[2] “The propriety of an actor’s motives in a particular setting necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis. The same generally holds true for the evaluation of the means that an actor relies on to achieve a goal.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. at 273 (filing of groundless lawsuit is improper in motive or means). See generally, e.g., United Truck Leasing Corp. v. Geltman, 406 Mass. at 816, 817 n. 10 (recognizing that the court may consider seven general factors set out in the Restatement (Second) of Torts, §767,[3] and citing Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201, 209-10 (1978) (tortious act would be improper in motive or means)); Comey v. Hill 387 Mass. 11, 19 (1982) (unfair age discrimination is improper motive); Hanna Paper Recycling Inc. v. ZBR Publications Inc., 1 Mass. L. Rptr. No. 29, 587 (April 11, 1994) (economic pressure is improper means).
In this case, Berman has failed to establish that either Winnick’s means or motive in soliciting Ms. McKenzie-Pollock’s business was improper. With respect to Winnick’s means, when he first encountered Ms. McKenzie-Pollock, he did nothing more than make himself available. She, in turn expressly stated that she wanted to “shop around” for adjusters and to speak to Winnick about his particular services. Moreover, although Berman informed Winnick that she had signed an informal contract with Berman, Ms. McKenzie-Pollock could cancel that contract within 72 hours according to its terms. Presumably, the cancellation provision was inserted precisely to give her the opportunity to discuss alternatives with competitors such as Winnick, if she wished. Under these circumstances, no fact-finder could deem Winnick’s means in soliciting Ms. McKenzie-Pollock’s business to be improper. Berman has also failed to establish that Winnick’s actions were improper in motive. The motive to solicit business for one’s own benefit, rather than to harm others, is a proper motive. United Truck Leasing Corp. v. Geltman, 406 Mass. at 817. In this case, Berman has failed to set forth competent evidence to establish that Winnick’s “real motive in these matters was to hurt [Berman].” Id. In fact, nothing about Winnick’s conduct, interest, proximity to the interference, or relationship with Berman establishes an improper motive. Restatement (Second) of Torts, §767 (1979). Flesner v. Technical Communications Corp., 410 Mass at 716.
Berman makes two principal arguments in support of his contention that Winnick’s actions were both improper in motive and in means. His first argument is that Winnick’s actions violate the Adjusters Code of Ethics.[4] However, that code has not been submitted to the court in connection with the instant motion and the court therefore has no evidence of its content.
Berman’s second argument is that Winnick was motivated by a burning personal desire to hurt Ber-man as evidenced by an earlier Grievance Committee’s report dated February 11, 1991 in which the parties agreed to “honor each other’s Contracts.” (Berman’s Exhibit A.) However, the report itself is not competent evidence of prior unethical conduct by Winnick or his company against Berman. Even if it were, it does not set forth the nature of the conduct. A single past episode of unspecified unethical conduct would not, standing alone, warrant a finding of improper motive in this case. Beyond allegations contained in his memorandum of law, Berman can point to no other competent evidence of an improper motive on Winnick’s part.
Accordingly, Berman’s claim for intentional interference with contractual relations (Count I) fails.
G.L.c. 93A (Count II)
Since the court concludes that Berman has failed to establish that Winnick’s actions were improper in either motive or means, it also concludes as a matter of law that those actions were neither unfair nor deceptive. Berman’s claim based on G.L.c. 93A fails, as well.
*309 ORDER
The motion of defendants Winnick and Swerling, Milton, Winnick, Public Adjusters, Inc. for summary judgment is ALLOWED.

 Winnick makes the argument that a violation of M.G.L.c. 93, §48 renders a contract void ab initio because it imposes a prison sentence on those who violate it. Simply because the statute provides for such a penalty, however, does not mean that contracts made in violation of the statutes are illegal and void ab initio. As noted earlier the court has discretion in this matter. Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. at 55.

 Section 766 provides: “One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

 The factors set out in the Restatement (Second) of Torts, §767 are (1) the nature of the actor’s conduct, (2) the actor’s motive, (3) the interests of the other with which the actor’s conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor’s conduct to the interference, and (7) the relations between the parties.

 The Supreme Judicial Court in United Truck Leasing Corp. v. Geltman, 406 Mass. at 816, accepted the standard expressed in a line of cases from other jurisdictions. In one such case, Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201 (1978), the court stated that a party’s “motive or means may be wrongful by reason of statute or other regulations or recognized rule of common law or perhaps an established standard of trade or profession.”