Kottmyer, Diane M., J.
The plaintiff, Palladium Group, Inc., filed this action against defendants, former employees Scot MacGillivray, Peter Graham, and James Leavitt (collectively, “individual defendants”) and their current employer, Cervello, Inc. (“Cervello”), seeking, inter alia, to enforce Non-Competition and Non-Solicitation provisions via injunctive relief. The individual defendants and Cervello (collectively, “defendants”) oppose the motion for a preliminary injunction on the grounds that each of the agreements upon which the plaintiff relies expressly provides that forfeiture of certain notes and the repurchase of shares “is the sole and exclusive remedy of the [plaintiff] for any breach by you of this Agreement.” For the following reasons, the plaintiffs motion for a preliminary injunction was DENIED, after hearing on June 22, 2010. Alternatively, the plaintiff has asked this court to permit the plaintiff to engage in expedited discovery concerning its substantive claims. That request is also DENIED.
THE RECORD
In March 2005, in connection with the plaintiffs purchase of the individual defendants’ company, Painted Word, and an Illinois corporation, ThinkFast, the plaintiff[1] hired the individual defendants. At that time, the individual defendants each entered into an identical[2] Non-Competition and Non-Solicitation Agreement (“Agreement”) with the plaintiff. Pursuant to this transaction, MacGillivray received deferred compensation, subordinated promissory notes (“Seller Notes”), and shares in the plaintiff (“Management Shares” and “Equity Participation Shares”). Graham and Leavitt received deferred compensation, Management Shares and Equity Participation Shares.
The Agreement included, in pertinent part, the following restrictions on the individual defendants’ activities:
For 3 years from the date of this agreement or, if longer, during your employment and for the 2 years from the date of termination of your employment, (in the aggregate, the “Non-Competition Period"), you shall not, directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise, compete with the [plaintiff] or any of its Affiliates or undertake any planning for any business competitive with the [plaintiff] or any of its Affiliates . . . [Y]ou agree not to engage in any manner in any activity that is directly or indirectly competitive with the business of [the plaintiff] . . . *425 or any of their Affiliates as conducted or under consideration as of the date of this agreement or at any time during your employment. . .
During the Non-Competition Period, you will not (i) hire or attempt to hire any employee of the Company or any of its affiliates, (ii) assist in any hiring by any Person, (iii) encourage any such employee to terminate his or her relationship with the Company or any of its Affiliates, (iv) solicit or encourage any customer ... or vendor of the [plaintiff] ... or any of their Affiliates to terminate or diminish its relationship with them, or, in the case of a customer, to conduct with you or any other Person (other than the [plaintiff]) any business or activity which such customer conducts or could conduct with the [plaintiff] or its Affiliates, (v) solicit or encourage any qualified leads of the [plaintiff] ... or any of their Affiliates to decide not to establish a relationship with the [plaintiff] or any of its Affiliates ... or (vi) disclose to any competitor the names of any customers who have done business with the [plaintiff] ... or any of their Affiliates . . .
Agreement, §3 (underlining in original).
In signing their respective Agreement, the individual defendants agreed “that each and eveiy one of the restraints is reasonable in respect to subject matter, length of time and geographic area . .. [and] acknowledge^] that, were you to breach any of the covenants contained in [the Agreement] . . ., the damage to the [plaintiff] would be irreparable.” Agreement, §4. Section 4 continues:
You acknowledge and agree that, pursuant to the terms of the Seller Notes[3] and the Holdings limited liability agreement, ... if you breach, violate or fail to comply with any of the provisions of Section 3 of this agreement, the outstanding principal amount of your Seller Note, any Management Shares . . . issued to you and any Equify Participation Shares . . . issued to you are subject to forfeiture or repurchase pursuant to the terms of the Seller Notes and the LLC Agreement, as applicable . . .
Notwithstanding any [sic] to the contrary herein, the forfeiture of your Seller Note and the repurchase of Management Shares and/or Equity Participation Shares pursuant to the terms and conditions of the Seller Note and the LLC Agreement, as applicable, is the sole and exclusive remedy of the [plaintiff] for any breach by you of this Agreement.

Id.

Pursuant to the Seller Note agreements,[4] the plaintiff promised to pay a specific amount, plus interest, by a certain date. The Seller Notes provided that, if the individual defendant
at any time breaches or otherwise violates or fails to comply with the terms of such [Agreement] the entirety of this [Seller] Note (including any and all then outstanding principal and any and all accrued and unpaid interest) and all rights of the [individual defendant] under or by reason of this Note shall be forfeited, and the obligations of the [plaintiff] under this Note shall automatically and irrevocably terminate, immediately upon such breach, violation or failure to comply and without the necessity of any further action of the [plaintiff] or the [individual defendant] . . .
Scot MacGillivray’s Affidavit, Exhibit 1, §7.2.4, and Exhibit 2, §6.2.4.
Finally, the LLC Agreement, also entered into contemporaneously with the Agreement, provides for the forfeiture of Management Shares and Equity Participation Shares in the event an individual defendant breaches his Agreement. As to the Management Shares, the parties agreed that if
an individual breaches any confidentiality obligation to the [plaintiff] or any of its Affiliates or any obligation not to compete with the [plaintiff] or any of its Affiliates or not to solicit any employees, customers, consultants or suppliers of the [plaintiff] or any of its Affiliates, then notwithstanding any other provision of this [LLC] Agreement, the individual shall be required to sell all of such [individual’s] Management Shares to the [plaintiff] for $1 in the aggregate . . .
Scot MacGillivray’s Affidavit, Exhibit 3, §9.6.1(a). Similarly, the parties agreed that if
a holder of Equity Participation Shares breaches any confidentiality obligation to the [plaintiff] or any of its Affiliates or any obligation not to compete with the [plaintiff] or any of its Affiliates or not to solicit any employees, customers, consultants or suppliers of the [plaintiff] or any of its Affiliates, then notwithstanding any other provision of this [LLC] Agreement, such holder shall be required to sell all of such holder’s Equity Participation Shares to the [plaintiff] for $1 in the aggregate . . .
Scot MacGillivray’s Affidavit, Exhibit 3, §9.11.1(a).[5]
Defendant Peter Graham voluntarily resigned from the plaintiff in August 2008; the plaintiff terminated MacGillivray in April 2009;[6] and the plaintiff terminated James Leavitt in June 2009. In October 2009, the individual defendants formed Cervello. On November 4, 2009, MacGillivray notified David Trierd, Palladium’s Chief Executive Officer, that he was in the process of “launching a new company with some of the ex-Palladium gang.” In May and June of 2010, Cervello hired two Palladium employees. On February 16, 2010, Palladium “formally” notified MacGillivray that “the Seller Notes have automatically and irrevocably terminated.” Scot MacGillivray’s Affidavit, Exhibit 7. The letter states that the forfeiture is a result of MacGillivray’s breach of Section 3 of the Agreement and also references the sections of the Seller Notes relating to forfeiture.
*426 DISCUSSION
I. Motion for Preliminary Injunction
The plaintiff asserts that, in forming and operating Cervello the individual defendants are in violation of the Agreement and seeks an injunction prohibiting the defendants from continuing with their alleged violations. Specifically, the plaintiff asks the court to prevent the defendants from competing with the plaintiff, hiring and/or soliciting any of the plaintiffs employees, soliciting any of the plaintiffs customers, and using and/or disclosing the plaintiffs confidential information. The defendants argue that the plaintiff cannot obtain injunctive relief because the plaintiff agreed that its sole and exclusive remedy for the individual defendants’ breach of §3 of the Agreement would be the forfeiture of the Seller Notes, Management Shares, and Equity Participation Shares.
The plaintiff does not contest that the Agreement in question so provides. Relying on Danieli & C. Officine Meccaniche S.p.A. v. Morgan Constr. Co., 190 F.Sup.2d 148 (D.Mass. 2002) (“Danielf), the plaintiff asserts that such language does not preclude injunctive relief. Danieli concerned contracts for the sale of goods that contained broad arbitration clauses, id. at 152, and the Court’s authority to grant injunctive relief to preserve the status quo pending arbitration. Id. at 154-56. The contracts in Danieli limited the remedies for delay and breach of warranty to liquidated damages. Id. at 152. The Court held that, by its terms the remedies provision applied to damages after liability had been determined, but not to preliminary relief safeguarding the parties’ remedies pending such a determination. Id. at 155, 156. The Court further noted that “for a limitation of damages provision to bar suit for specific performance, the intent of the parties to provide a exclusive remedy must be explicit” Id. at 156 (emphasis added).
The language sole and exclusive remedy is unambiguous on its face. However, there is language in Section 4 of the Agreement suggesting that the parties intended that injunctive relief may be available. To the extent that this language renders the Agreement ambiguous as to the available remedies for violations, the court may consider parol evidence to determine the parties’ intent. Cullinet Software, Inc. v. McCormack & Dodge Corp., 400 Mass. 775, 776 (1987) (“Where an agreement is ambiguous, parol evidence is admissible to show the intention of the parties”); see Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997) (holding that parol evidence rule “bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing” but “does not bar extrinsic evidence that elucidates the meaning of an ambiguous contract term”). The e-mail exchanges attached to the Affidavit of John B. Steele establish that the original draft contained language establishing the company’s right to injunctive relief, in addition to other available remedies. (Steel Aff. Ex. 1.) Thereafter, the parties discussed the issue and agreed that “the remedy for a breach of the non-competition agreement that governs forfeiture of the note and LLC equity interests will be limited to forfeiture and a person[al] suit for damages or injunction will not be available under that agreement.” (Id., Ex. 2.) The agreement was then revised to limit the remedy “to forfeiture of the notes and LLC profits interest.” (Ex. 3.) Thus, evidence submitted by defendants establishes that the parties intended the exclusive remedy clause to exclude actions for injunc-tive relief and damages. Based on the uncontroverted evidence the defendants have submitted,[7] the plaintiff has failed to demonstrate a likelihood of success. Finally, as the alleged violations of Section 3 serve as the predicate for plaintiffs claims for tortious interference, civil conspiracy, and chapter 93A, the plaintiff has not established a likelihood of success on any of these claims.
The plaintiffs motion for a preliminary injunction is therefore DENIED. See, e.g., United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 814-17 (1990); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
II. Motion for Expedited Discovery
In the event the court did not allow its request for a preliminary injunction, the plaintiff alternatively asked this court to enable the plaintiff to engage in expedited discovery. In view of the Steele affidavit and attachments, the Court is of the view that, to avoid unnecessary expense, before any discovery takes place with respect to the merits of plaintiffs claims, plaintiff must produce evidence that it has a right to relief. Accordingly on application of the plaintiff, the Court will permit limited discovery on this issue, e.g., document requests, interrogatories and/or depositions of attorneys involved in negotiating and drafting the agreements. All other discovery is stayed.
ORDER
For the foregoing reasons, the plaintiffs motion for a preliminary injunction and, in the alternative, for expedited discovery is DENIED. All discovery is stayed except as authorized by the undersigned. A status conference will be held in courtroom 430 on October 1, 2010 at 3:00 p.m. (or other date convenient to the parties and the Court).

 In March 2005, the plaintiffs predecessor, Balanced Scorecard Collaborative, Inc., was the actor. For purposes of simplicity, and except as necessary, the court will treat the plaintiff as being the relevant party regardless of the time period.

 The plaintiff has provided copies of the individual defendants’ Non-Competition and Non-Solicitation Agreements at Exhibits 2 (Scot MacGillivray), 3 (Peter Graham), and 4 (James Leavitt) of its verified complaint. Exhibit 2 is missing page 6 of the document, otherwise the three exhibits are identical.

 Although the record reflects that only MacGillivray received Seller Notes, all three agreements refer to forfeiture of the Seller Notes.

 The parties executed the Non-Convertible Subordinated Note for $105,000.00 on March 31, 2005, and the Convertible Subordinated Note for $105,102.75 on January 1, 2006. Each document contains the forfeiture provision quoted below.

 MacGillivray’s employment letter, dated March 30, 2005, contains a provision indicating that, in the event plaintiff terminates him “without ‘cause’ ” or he terminates his employment
with “good reason” ... all Equity Participation Shares held by you shall not be subject to repurchase under Section 9.11.1 [a] (iij of the LLC Agreement on account of a failure by you to comply with the first paragraph of Section 3 of the Non-Competition and Non-Solicitation Agreement. . . regarding competition with [the plaintiff] or any of its affiliates. The terms of [this] paragraph (ix) shall no longer apply if at any time you breach or otherwise fail to comply with all of the terms and conditions of the second paragraph of Section 3 of the Non-Competition and Non-Solicitation Agreement . . . regarding, among other things, non-solicitation or employees, qualified leads, customers, consultants or suppliers of [the plaintiff] or any of its affiliates.
Scot MacGillivray’s Affidavit, Exhibit 4, §ix. The plaintiff has alleged that the individual defendants have violated both the first and second paragraphs of Section 3 of the Agreement.

 According to MacGillivray’s employment letter, dated March 30, 2005, and included as Exhibit 4 to MacGillivray’s affidavit, MacGillivray was an at-will employee.

 The plaintiff was given an opportunity to submit evidence challenging the facts set forth in Steele’s affidavit and the exhibits thereto. Palladium then attempted to withdraw its motion for a preliminary injunction, stating that it was unable in the limited time available to obtain contrary evidence. Should Palladium obtain such evidence, it may move for reconsideration. The Court denied Palladium’s request to withdraw its motion for a preliminary injunction because the documents attached to the Steele affidavit, if not controverted, appear to be dispositive of Palladium’s right to relief in this lawsuit.